Filed 12/29/16

# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,

        Plaintiff and Respondent,

        v.

TORY J. CORPENING,

        Defendant and Appellant.

S228258

Ct.App. 4/1 D064986

San Diego County
Super. Ct. No. SCS258343

Because our Penal Code is so expansive, the same conduct can violate more than one criminal statute. When that happens, Penal Code section 654, subdivision (a),[1] prohibits "punish[ment] under more than one provision" for any "act or omission that is punishable in different ways by different provisions of law." The defendant in this case was convicted of both carjacking and robbery based on the same forceful taking of a vehicle. What we must decide is whether the forceful taking of this vehicle — the same taking that, according to the prosecution, accomplished the crimes of both robbery and carjacking — constitutes a single physical act subject to the prohibition on multiple punishment under section 654. Since the same action completed the actus reus for each of these two crimes, we hold that section 654 forbids punishment under both provisions.

---

[1] Further statutory references are to the Penal Code.

1

## I. BACKGROUND

The relevant facts are not in dispute, and provided the basis for defendant's guilty plea. In the early morning hours of July 22, 2012, Walter Schmidt, Sr., and his son loaded their van with valuable coins they were planning to sell at a San Diego swap meet where Schmidt, a rare coin dealer, operated a booth. The van was parked in the driveway in front of Schmidt's home and contained roughly $70,000 worth of coins. With the van loaded, Schmidt's son went to lock up the house. Schmidt meanwhile got into the driver's seat and prepared to pull away. At that moment, a man approached the vehicle pointing a gun at Schmidt's face and yelling, "Get out of the car or I'll shoot you." Schmidt complied. But as the man climbed into the vehicle, Schmidt tried unsuccessfully to wrestle the gun away. The man again pointed the gun at Schmidt, who began retreating from the van. As the man climbed into the van a second time, Schmidt once again tried to stop the robbery, lunging for the gun. This time, however, the man quickly threw the vehicle into reverse gear and began pulling away. With the van rolling backwards, Schmidt grabbed onto the steering wheel. He was dragged approximately 18 feet down the driveway before he lost his grip and fell to the pavement. The man drove some 50 yards down the street before picking up a confederate. Those two were then followed by several other accomplices to an apartment complex where the group began unloading the boxes of coins. In one of the trailing vehicles was defendant Tory J. Corpening, Jr., who, according to one accomplice, had hatched the scheme to rob Schmidt after following him home one day from the swap meet.

After Schmidt called the police, officers arrested some members of the group near the apartment complex. Corpening, who had fled when the police arrived, eventually turned himself in. Corpening pleaded guilty to carjacking (§ 215, subd. (a)), robbery (§ 211), assault with a deadly weapon (§ 245, subd.

2

(a)(1)), receiving stolen property (§ 496, subd. (a)), and witness intimidation (§ 136.1, subd. (a)(1)). The basis for Corpening's plea on the first two charges, according to the record, were allegations that his accomplice "did unlawfully take a motor vehicle in the possession of Walter Schmidt by force and fear," and "did unlawfully and by means of force and fear take personal property from the person, possession, and immediate presence of Walter Schmidt." The record also indicates that the personal property in question was inside the vehicle at the time the vehicle was forcefully taken and was not removed from the vehicle before or during the incident that resulted in its forceful taking.

In its sentencing brief, the prosecution recommended that the trial court stay the robbery sentence, because — in the prosecution's view — section 654 barred punishment for the robbery charge in addition to punishment for the carjacking charge. The trial court rejected this recommendation. Without any elaboration, the court concluded based on the foregoing facts that "[the robbery] is a separate offense [from] the carjacking." The court sentenced Corpening to six years and eight months in prison — a term that included five years for carjacking plus a consecutive one-year term for robbery. Corpening also received eight months for witness intimidation. Pursuant to section 654, the court stayed the remaining punishments for assault with a deadly weapon and receiving stolen property.

On appeal, Corpening argued that section 654 barred his consecutive one-year term for robbery, because the robbery and carjacking comprised a single physical act. The Court of Appeal was not persuaded. Relying on *Neal v. State of California* (1960) 55 Cal.2d 11, 19 (*Neal*), the appellate court understood the inquiry to turn on the intent or objective of the actor — specifically, whether the defendant's course of conduct reflected but one objective. The Court of Appeal then held that the trial court made an implicit finding that the robbery and

3

carjacking were separate acts with different objectives, even though, the appellate court acknowledged, the crimes "arose out of the same transaction."

Corpening petitioned for review. He claimed that our more recent decision in *People v. Jones* (2012) 54 Cal.4th 350 (*Jones*), which the parties had failed to cite and the Court of Appeal apparently did not consider, required that the punishment for his robbery conviction be stayed. *Jones* clarified that the inquiry into whether a defendant's criminal conduct reflects a single intent or objective, pursuant to *Neal*, is relevant only after it has been determined that such conduct involves more than "a single act." (*Id.* at pp. 359-360.) We therefore granted review and transferred the matter back to the appellate court so it could apply the *Jones* framework. The Court of Appeal again affirmed Corpening's sentence. The court explained that *Jones* involved "one act of possessing one firearm" but here there were "several discrete physical acts" necessary to complete the crimes of robbery and carjacking: "forcing the victim out of the car, struggling with him as he attempted to resist, then again struggling with the victim, [and] then driving off with the van." Having determined this to be a course of conduct case, rather than a single physical act case, the appellate court applied "the multiple objectives test" from *Neal*. The Court of Appeal then found "sufficient evidence in this record from which the [trial] court could have concluded there were two intents, close in time" — one intent to steal the coins and a second to take the van for purposes of escaping the scene. We granted review once more.

## II. DISCUSSION

Section 654, subdivision (a), provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." So

4

if the forceful taking of Schmidt's vehicle constitutes a single "act," then section 654 forbids Corpening from being punished for robbery in addition to carjacking.**2**

Whether a defendant may be subjected to multiple punishment under section 654 requires a two-step inquiry, because the statutory reference to an "act or omission" may include not only a discrete physical act but also a course of conduct encompassing several acts pursued with a single objective. (See *Neal*, *supra*, 55 Cal.2d at p. 19; *People v. Beamon* (1973) 8 Cal.3d 625, 639.) We first consider if the different crimes were completed by a "single physical act." (*Jones*, *supra*, 54 Cal.4th at p. 358.) If so, the defendant may not be punished more than once for that act. Only if we conclude that the case involves more than a single act — i.e., a course of conduct — do we then consider whether that course of conduct reflects a single "intent and objective" or multiple intents and objectives. (*Id.* at p. 359; see also *People v. Mesa* (2012) 54 Cal.4th 191, 199 (*Mesa*) ["Our case law has found multiple criminal objectives to be a predicate for multiple punishment only in circumstances that involve, or arguably involve, multiple acts"].) At step one, courts examine the facts of the case to determine whether multiple convictions are based upon a single physical act. (See *Mesa*, *supra*, 54 Cal.4th at p. 196.) When those facts are undisputed — as they are here — the application of section 654 raises a question of law we review de novo. (See *People v. Harrison*

---

**2**      Section 215, subdivision (c), makes clear that a person may be charged and convicted under both the robbery and carjacking statutes. It also emphasizes that "no defendant may be punished" under both laws "for the same act which constitutes a violation of both." (*Ibid.*) In this way, the Legislature removed any doubt that section 654 applies to these two crimes when they arise from a single physical act. We therefore analyze the multiple punishment issue in this case relying on the well-settled principles governing section 654. (See *People v. Dominguez* (1995) 38 Cal.App.4th 410, 417-418 (*Dominguez*).)

(1989) 48 Cal.3d 321, 335 ["the applicability of [section 654] to conceded facts is a question of law"]; accord, *People v. Perez* (1979) 23 Cal.3d 545, 552, fn. 5.)

Precisely how to resolve whether multiple convictions are indeed based on a single physical act has often left courts with more questions than answers.  (See *Jones*, *supra*, 54 Cal.4th at p. 358 [acknowledging "that what is a single physical act might not always be easy to ascertain"].)  Neither the text nor structure of section 654 resolves when exactly a single act begins or ends, for example, or how to take account of the fact that virtually any given physical action may, in principle, be divided into multiple subsets that each fit the colloquial definition of an "act."

Because we had to survey some of this terrain in *Jones* to address a related question, we look to that case for guidance.  The defendant in *Jones* had been sentenced concurrently for three crimes:  "possession of a firearm by a felon," "carrying a readily accessible concealed and unregistered firearm," and "carrying an unregistered loaded firearm in public."  (*Jones*, *supra*, 54 Cal.4th at p. 352.) We held that possessing a particular firearm on a single occasion constituted a single physical act that "may be punished only once under section 654."  (*Id.* at p. 357.)  We did so because, as the prosecutor had acknowledged, " 'the same exact conduct' " accomplished the actus reus — or act requirement — for each of the relevant crimes.  (*Id.* at p. 359; see Black's Law Dict. (10th ed. 2014) p. 44, col. 1 [defining "actus reus" as "[t]he wrongful deed that comprises the physical components of a crime"].)  In particular, it was the defendant's possession of a specific firearm on a specific date that, according to the charging document, completed the actus reus for all three crimes.  (See *Jones*, at p. 359 ["The record establishes that the jury convicted defendant of each crime due to his being caught with the gun in the car on May 26, 2008, not due to any antecedent possession. The amended information alleged that defendant committed all three crimes on or

6

about May 26, 2008, the day he was arrested, and the verdicts all found defendant guilty as charged."].)  In the absence of any distinct actions that could be associated with the actus reus for each of those crimes, we held that the defendant's concurrent sentences were improper.  (*Id.* at pp. 353, 360.)

*Jones* expressly overruled *In re Hayes* (1969) 70 Cal.2d 604 (*Hayes*).  The defendant in *Hayes* had been sentenced for violating two different penal statutes: driving while intoxicated and driving with an invalid license.  (*Id.* at p. 605.)  We held that section 654 did not prohibit multiple punishment for the two crimes. (*Hayes*, 70 Cal.2d at p. 611.)  In *Jones*, however, we found *Hayes* contrary to the plain language of section 654, which bars multiple punishment for any " 'act . . . that is punishable in different ways by different provisions of law.' " (See *Jones*, *supra*, 54 Cal.4th at p. 356.)  Driving while intoxicated and driving while on an expired license, we explained, are a "single physical act." (*Id.* at p. 355.)  Because the same physical action — the defendant's driving — completed the actus reus of each charged crime, that action amounted to a single physical act under section 654.

A similar principle underlies our decision in *Mesa*, which is also instructive.  What we held is that section 654 did not permit punishment for active participation in a street gang in addition to the defendant's permissible punishments for assault with a firearm and possession of a firearm by a felon. (*Mesa*, *supra*, 54 Cal.4th at p. 201.)  We reached this conclusion because the crime of active participation in a street gang requires "willful promotion, furtherance, or assistance in felonious conduct by members of the gang." (*Id.* at p. 200.)  That crime was not completed until the defendant either shot the victims or possessed a firearm. (*Ibid.* [explaining that mere active participation in a gang and knowledge of the gang's pattern of criminal activity "do not complete the offense"].)  The defendant's "shooting the victims or possessing a firearm," we explained, "was the

7

only evidence that he promoted, furthered, or assisted felonious criminal conduct by members of the gang." (*Ibid.*) Because these actions separately accomplished the actus reus for active participation in a gang — and the charging document and evidence at trial demonstrated they had done so — shooting the victims and possessing the firearm were each treated as single acts barring multiple punishment. (See *ibid.* ["the information alleged that defendant committed each assault and related gang participation offense *on the same day*; in other words, he committed both offenses simultaneously"].)

These decisions reflect a common idea: Whether a defendant will be found to have committed a single physical act for purposes of section 654 depends on whether some action the defendant is charged with having taken separately completes the actus reus for each of the relevant criminal offenses. (See *Jones*, *supra*, 54 Cal.4th at pp. 359-360; *Mesa*, *supra*, 54 Cal.4th at p. 200.) On these facts, the forceful taking of a vehicle on a particular occasion is a single physical act under section 654. The forceful taking of Schmidt's van, and the rare coins contained therein, completed the actus reus for robbery — the felonious taking of another's personal property by force.[3] Precisely the same action, not a separate but related one taken at a separate time or in a distinct fashion, was also the basis for the contention that the defendant completed the actus reus for carjacking — the felonious taking of another's motor vehicle by force.[4] It was the same show of

[3]     "Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.) A robbery conviction also requires that the defendant "intend to deprive the victim of the property permanently." (*People v. Huggins* (2006) 38 Cal.4th 175, 214.)

[4]     " 'Carjacking' is the felonious taking of a motor vehicle in the possession of another, from his or her person or immediate presence, . . . against his or her

*(footnote continued on next page)*

force — committed at the same time, by the same person — that yielded for Corpening and his coconspirators the rare coins contained within the carjacked van, giving rise to the robbery conviction. Neither offense was accomplished until completion of the single forceful taking identified by the prosecution as the basis for conviction under the carjacking and robbery statutes. These circumstances render it all but impossible to accept the contrary contention that the forceful taking in this case constitutes multiple physical acts for purposes of section 654. (Cf. *People v. Vargas* (2014) 59 Cal.4th 635, 638 [holding that a defendant's prior felony convictions, "one for robbery and one for carjacking," did not qualify as separate strikes for purposes of sentence enhancement where they "were based on the same act, committed at the same time, against the same victim"].)

Applying section 654 to similar facts, the Court of Appeal arrived at the same conclusion in *Dominguez*, *supra*, 38 Cal.App.4th 410. The victim there had parked his van near a restaurant where he had planned to eat. Suddenly, a man entered the van through the side sliding door. The assailant then grabbed the victim, pressed what felt to the victim like a gun against the back of his neck, and demanded he relinquish everything he had. After about five minutes, the victim handed over two rings and a chain before running away from the vehicle to call the police. The van was missing when the police arrived at the scene; it was later recovered less than a mile away. (*Id.* at pp. 414-415.)

A jury then convicted the defendant of both robbery and carjacking. (*Dominguez*, *supra*, 38 Cal.App.4th at p. 414.) The trial court imposed a

---

*(footnote continued from previous page)*

will and with the intent to either permanently or temporarily deprive the person in possession of the motor vehicle of his or her possession, accomplished by means of force or fear." (§ 215, subd. (a).)

9

concurrent sentence for the robbery after concluding, " 'out of an abundance of caution,' " that section 654 barred the sentences from running consecutively. (*Id.* at p. 416.) On appeal, the defendant argued, inter alia, that he could be punished for only one of the offenses. (*Id.* at pp. 416-417.) The appellate court agreed, finding that because "the carjacking and robbery here constituted 'the same act,' " punishment for both would run afoul of section 654. (*Id.* at p. 420.) The court explained that the defendant had "placed a cold metallic object to the back of the victim's neck and demanded 'everything he had . . . .' " (*Ibid.*) "Simultaneously," the court continued, "the victim handed over his jewelry and van by handing over the jewelry and fleeing the van." (*Ibid.*) The court held that this specific forceful taking — which completed both the robbery and carjacking — was a single physical act for purposes of section 654. (See *ibid.* ["The long-standing rule is that '. . . the theft of several articles at one same time constitutes but one offense [even where] such articles belong to several different owners.' "].) Separate punishments were forbidden as a result. (See *ibid.* ["the same act was essential to both offenses and thus is not separately punishable under Penal Code section 654"].)[5]

So too here. The forceful taking of Schmidt's van was a single physical act for purposes of section 654 because that act simultaneously accomplished the actus reus requirement for both the robbery and carjacking. It matters not that this act, just like the acts in *Hayes* and *Dominguez*, can be broken down into constituent parts. (See Black's Law Dict., *supra*, at p. 44, col. 1 [actus reus is

---

[5] Because the trial court in *Dominguez* had also found section 654 applicable, the only correction the Court of Appeal made was to stay the robbery sentence, rather than allowing it to run concurrently. (See *Dominguez*, *supra*, 38 Cal.App.4th at p. 420.)

"[t]he wrongful deed that comprises the *physical components* of a crime" (italics added)].) Indeed, any act can be so subdivided theoretically. To commit the single physical act of driving in *Hayes*, *supra*, 70 Cal.2d 604, for example, the defendant would have had to enter the vehicle, turn on the ignition, put the car into gear, press the accelerator, and steer the vehicle for some distance. The forceful taking in *Dominguez*, moreover, required the defendant to enter the victim's van, press a gun against the victim's neck, grab him, demand his belongings, wait five minutes while the victim removed his rings, collect the jewelry from him, and drive away. But these were nothing more than components of a single physical act because none of these acts on their own completed the actus reus required for the relevant crimes. In *Dominguez*, for example, simply entering the vehicle or grabbing the victim completed neither the robbery nor the carjacking. In this case, the Court of Appeal found "several discrete physical acts" were necessary to complete the crimes of robbery and carjacking — to wit, "forcing the victim out of the car, struggling with him as he attempted to resist, then again struggling with the victim, [and] then driving off with the van." But, as in *Dominguez*, none of these actions on their own completed the actus reus for either robbery or carjacking. Only the forceful taking of the van — and with it, of the rare coins contained therein — did so.

Nor does it matter that other criminal acts may have been committed in the course of this forceful taking. For example, the accomplice's forcing Schmidt out of the vehicle at gunpoint could, alone, give rise to criminal liability. Indeed, Corpening was also convicted of assault with a deadly weapon (§ 245, subd. (a)(1)). The trial court stayed this conviction under section 654. But the question we must answer is specific to the crimes of robbery and carjacking: whether both of these crimes were accomplished by means of a single forceful taking, thereby precluding multiple punishment. That *other* crimes may also have been

11

accomplished by that act or one of its component parts simply means the punishments for such crimes, if any were charged, should be stayed as well. Neither is it relevant that, in some other case, the prosecution could conceivably have identified two separate physical acts — even if arguably related — that would have provided a basis for arguing that two separately punishable crimes had been committed. The prosecution did not, because it could not, make any such allegation here.

What is instead relevant in this case is that a single physical act served as the basis for convicting the defendant of two separate crimes. As a result, we do not reach step two of the section 654 analysis: whether the forceful taking involved multiple intents and objectives. (See *Jones*, *supra*, 54 Cal.4th at pp. 359-360; *Mesa*, *supra*, 54 Cal.4th at pp. 199-200; see also *People v. Louie* (2012) 203 Cal.App.4th 388, 397 ["A single criminal act, even if committed incident to multiple objectives, may be punished only once"].) Rather, we must conclude that Corpening's one-year robbery sentence, which was based on the same act as his carjacking sentence, cannot stand. Section 654 requires that the robbery sentence be stayed. (See *Dominguez*, *supra*, 38 Cal.App.4th at p. 420.)[6]

---

[6]    Although the trial court thoroughly explained other aspects of its sentencing decisions, the court concluded, without explanation, that "[the robbery] is a separate offense [from] the carjacking." The court did so despite the prosecution's contrary recommendation. To facilitate meaningful appellate review, the better practice is for trial courts to state on the record their reasons for concluding that multiple offenses are or are not separately punishable under section 654. (See *People v. Lewis* (2006) 39 Cal.4th 970, 1063-1064; see also *People v. Williams* (1980) 103 Cal.App.3d 507, 519 [explaining that a "clear purpose" of requiring a statement of reasons "is to permit appellate review"].)

### III. CONCLUSION

A defendant may not be punished more than once for a single physical act that violates multiple provisions of the Penal Code. The charging document in this case identified the same forceful taking of a vehicle as the physical act completing the actus reus for both robbery and carjacking. Where the same physical act accomplishes the actus reus requirement for more than one crime, that single act cannot give rise to multiple punishment. Because that is precisely what happened here, Corpening's one-year robbery sentence must be stayed. We reverse the judgment of the Court of Appeal and remand for proceedings consistent with this opinion.

**CUÉLLAR, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**WERDEGAR, J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**

13

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Corpening

_____

**Unpublished Opinion** XXX NP opn filed 6/24/16 – 4th Dist., Div. 1
**Original Appeal**
**Original Proceeding**
**Review Granted**
**Rehearing Granted**

_____

**Opinion No.** S228258
**Date Filed:** December 29, 2016

_____

**Court:** Superior
**County:** San Diego
**Judge:** Francis M. Devaney and Kathleen M. Lewis

_____

**Counsel:**

Cynthia M. Jones, under appointment by the Supreme Court, for Defendant and Appellant.

Kamala D. Harris, Attorney General, and Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steven T. Oetting, Deputy State Solicitor General, Charles C. Ragland, Scott C. Taylor, Robin Urbanski, Barry J.T. Carlton and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Cynthia M. Jones
Avatar Legal
19363 Willamette Dr., #194
West Linn, OR 97068
(858) 793-9800

Christopher P. Beesley
Deputy Attorney General
600 West Broadway, Suite 1800
San Diego, CA 92101
(619) 645-2567