Filed 5/24/21  P. v. Nelson CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B296142 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. LA084564) |
| v. | |
| KURT WAYNE NELSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Joseph A. Brandolino, Judge.  Affirmed in part, reversed in part, and judgment modified.

Lori Nakaoka, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews and J. Michael Lehmann, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

The trial court sentenced Kurt Wayne Nelson to 40 years in prison following his conviction on numerous charges resulting from a residential robbery during which Nelson impersonated a police officer, threatened two residents with a gun, and shocked them with a Taser. Nelson later attempted to dissuade the victims from testifying against him. Nelson contends the trial court should have sentenced him on two robbery charges and stayed his sentences for false imprisonment and assault with a semiautomatic firearm because Nelson completed the crimes by a single physical act or, if Nelson committed the crimes in a course of conduct, he had a single intent and objective.

Nelson and the People agree that Nelson's convictions for assault with a firearm must be reversed because assault with a firearm is a lesser included offense of assault with a semiautomatic firearm. They also agree that one of Nelson's two first degree residential burglary convictions must be reversed because Nelson committed only one burglary, and that two one-year prior prison term enhancements must be stricken because neither of Nelson's prior prison terms was for a sexually violent offense.

Finally, Nelson and the People agree that the trial court erred by imposing consecutive terms of one-third the middle term of two years (eight months) on two counts of attempted witness dissuasion rather than the full middle term on each count required by Penal Code[1] section 1170.15. They disagree about whether we should modify Nelson's sentence to impose the full consecutive

---

[1] All further undesignated statutory references are to the Penal Code.

terms on the two witness dissuasion counts or remand the case to the superior court for resentencing.

We reverse Nelson's convictions of assault with a firearm and one conviction of first degree residential burglary, and we strike the two one-year prior prison term enhancements. Because the record demonstrates the trial court would not impose concurrent sentences on the attempted witness dissuasion counts, remand is not appropriate, and we modify Nelson's sentence to impose consecutive full middle terms of two years on each count of attempted witness dissuasion. We affirm the judgment in all other respects.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Amended Consolidated Information*

The amended consolidated information charged Nelson with two counts of kidnapping to commit another crime (§ 209, subd. (b)(1); counts 1 and 2); two counts of first degree residential robbery (§ 211; counts 3 and 4); two counts of making criminal threats (§ 422, subd. (a); counts 5 and 6); torture (§ 206; count 7); two counts of assault with a deadly weapon (a Taser) (§ 245, subd. (a)(1); counts 9 and 10); two counts of false imprisonment by violence (§ 236; counts 11 and 12); two counts of first degree residential burglary (§ 459; counts 13 and 16); two counts of assault with a firearm (§ 245, subd. (a)(2); counts 14 and 15); and two counts of attempted witness dissuasion (§ 136.1, subd. (a)(2); counts 19 and 20).[2]

_____

[2]    The court dismissed a second torture charge (count 8) at the preliminary hearing and two charges of kidnapping for ransom (counts 17 and 18) pursuant to section 995.

The information alleged as to counts 1 through 7 and 9 through 16 that Nelson committed the crimes while impersonating a police officer (§ 538d). The information alleged as to counts 1 through 4 and 7 that Nelson personally used a firearm within the meaning of section 12022.53, subdivision (b), and as to counts 5, 6, and 9 through 15 that Nelson personally used a firearm within the meaning of section 12022.5, subdivision (a).[3] The information alleged as to counts 1 through 7, 9 through 16, and 19 and 20 that Nelson had suffered three prior prison terms (§ 667.5, subd. (b)).

The People amended the information at trial to conform to proof to add two counts of assault with a semiautomatic firearm (§ 245, subd. (b); counts 21 and 22) with police officer impersonation and firearm use allegations. Nelson pleaded not guilty and denied the special allegations.

B.   *The Evidence at Trial*

1.   *The June 8, 2016 crimes*

On June 8, 2016 at approximately 1:00 p.m. Jose Chavez was in the backyard of his home in North Hollywood, California. Jose's adult daughter Catherine was eating lunch in the kitchen.[4] Catherine saw Nelson run to their front door, and she heard

---

[3]   The information alleged as to one of the counts of first degree residential burglary (count 13) that Nelson personally used a firearm in the commission of the offense, but not as to the other first degree residential burglary count (count 16). The verdict form directed the jury to consider a firearm enhancement on count 16. Nelson does not raise this issue on appeal.

[4]   For clarity, we refer to Jose Chavez and Catherine Chavez by their first names.

4

banging on the door. Nelson yelled, "Police. Open up." Catherine was scared.

Catherine ran to the backyard and told Jose a police officer was at the door. Jose and Catherine returned to the house and looked through the open kitchen window at Nelson.

Nelson again identified himself as a police officer, and gestured towards his waistband, displaying a gold badge and a gun. He waved a piece of paper at Jose and Catherine, yelling, "I have a warrant." Catherine told Jose to open the door, and Jose let Nelson in.

Nelson entered the house "very aggressive[ly]," and told Jose and Catherine to "move back." Nelson drew and racked a gun, and pointed it at Jose and Catherine, causing them to retreat two or three steps. The gun was square, similar to a police gun, and appeared to be semiautomatic. A second man entered the house after Nelson and went into the bedroom area.[5]

Nelson told Jose and Catherine to move into the kitchen, and to keep their hands where he could see them. Nelson continued to point the gun at them. Nelson told Jose and Catherine to sit down on the kitchen floor, and then to lie face down on the floor. Jose and Catherine were scared and believed Nelson intended to kill them.

Nelson repeatedly and angrily yelled, "Where's Gordo?" Jose and Catherine told Nelson they did not know anyone named "Gordo." Jose told Nelson he had come to the wrong house. Nelson pointed the gun at Jose's head and yelled at Jose not to look at him. Jose felt the gun to his head as Nelson told Catherine he was going to kill Jose.

---

[5]     Police suspected the second man was Frederick Dorton, known as "Duke." Dorton died before trial.

Nelson then asked Jose and Catherine, "Where's the dope?" Jose again told Nelson he had come to the wrong house. Nelson stepped on Catherine's leg and asked her "where the dope was." Nelson was "very aggressive" and "was cussing" at Catherine.

Nelson shocked Catherine with a Taser, causing Catherine to scream loudly and cry. Jose thought Nelson had shot Catherine. Catherine told the police that just before Nelson fired the Taser, Nelson told Jose, "I'm going to tase your daughter so you can see her hurt."

Nelson kicked Catherine and pressed what Catherine thought was the gun to the back of her knee. Nelson told Catherine he knew where to shoot her so she would not walk "normal[ly]" again.

Nelson shocked Catherine with the Taser again. Catherine screamed and told Nelson to stop. Catherine testified the pain from the Taser "was like getting electrocuted," "a 10" on a pain scale of zero to 10, and "like a shooting pain throughout [her] whole body at the same time."

Nelson continued loudly asking, "Where's the fucking dope?" Nelson said, "Don't you watch TV and see how cops treat people or shoot people? Where is the dope?" Nelson told Jose and Catherine "he was going to 'fucking kill' [them] and no one would 'fucking know that he did it, that it was him.'"

Nelson shocked Jose with the Taser. Jose "felt something . . . very hot," and his "entire body became numb"; the sensation was "like, a very strong pain from heat." Jose thought Nelson had shot him. Jose "was screaming really loud[ly]" from the pain. Jose testified, "The more I yelled . . . the harder [Nelson] did it; the more he did it, the louder I would yell. . . . [Nelson] just kept doing it. It was stronger and stronger." Catherine "kept telling [Nelson] to 'stop,' and he wouldn't stop." Catherine thought

6

Jose was dying.  Jose ultimately "played dead" so that Nelson would stop shocking him with the Taser.

Nelson's accomplice emerged from the bedroom area.  Nelson asked him, "Did you find him?"  The accomplice did not reply.  Nelson told Jose and Catherine, "You guys are fucking stupid.  We're going to fucking kill you, you watch."  Nelson also told Jose and Catherine that he and his accomplice would return with "backup."  The men left.

Catherine told Jose to "just wait."  Catherine waited about a minute and then got up to make sure the men had gone.  Jose remained on the floor until Catherine told him the men had left.

Jose had two Taser darts buried in the skin on his back.  Jose asked Catherine to cut off the Taser wires.  Catherine and Jose walked into the backyard, where Jose smoked a cigarette.  Jose was upset and angry.  Catherine was scared.  Catherine called her brother, who told her to call 911.

A police officer who responded to Catherine's 911 call described her as "crying," "angry," "very . . . scared," and "hysterical."  Paramedics arrived and administered medical care to Jose, but were unable to remove the Taser darts from Jose's back.  A doctor ultimately removed the darts from Jose's back at the hospital; Jose had two small marks on his back, but did not receive any stitches.  A defense medical expert testified Jose's injuries were minor.

Catherine's work backpack and other personal property were missing from her bedroom.  Catherine's missing property included a credit card, several pairs of designer sunglasses, diamond jewelry, seven designer watches, and a designer handbag.

Police compared Nelson's DNA profile with the DNA profile from a zip tie collected from the Chavez home. The profiles were consistent.

### 2. *The February 7, 2017 crimes*

On February 7, 2017, a week before Nelson's preliminary hearing, a "short, fat man" arrived at the Chavezes' front gate. The man yelled at Jose in Spanish to "come here." The man told Jose and Catherine he was Nelson's friend. The man said Nelson had given him the Chavezes' address, and told the man to convince Jose and Catherine not to press charges against Nelson and not to testify at the preliminary hearing. The man said Nelson would reveal the identity of the person behind the attack on Jose and Catherine if they did not appear in court.[6] Catherine recorded the man on her cellular telephone. Jose and Catherine were scared. Jose and Catherine later identified the man in a photographic display.[7]

## C. *The Jury Verdicts and the Sentencing*

The jury acquitted Nelson on two charges of kidnapping to commit another crime (counts 1 and 2), torture of Jose (count 7), and two assault with a deadly weapon charges (counts 9 and 10). The jury found Nelson guilty on the remaining charges, and found the police impersonation and firearm allegations true.

---

[6] While in custody, Nelson made several telephone calls discussing plans to have someone approach Jose and Catherine and ask them not to testify.

[7] The Chavezes had installed surveillance cameras following a prior burglary. The cameras recorded the June 8, 2016 and February 7, 2017 crimes, and the jury viewed videos and still photographs from the surveillance camera footage.

The trial court bifurcated the prior prison term allegations from the trial on the other charges. Nelson waived his right to a jury trial on the prior prison term allegations, and the trial court found true two of three prior prison term allegations.[8]

The trial court sentenced Nelson to an aggregate state prison term of 40 years. The court selected count 22 (assault of Catherine with a semiautomatic firearm) as the principal term and sentenced Nelson to the upper term of nine years, plus the upper term of 10 years for the firearm enhancement pursuant to section 12022.5, subdivision (a), and an additional year for impersonating a police officer pursuant to section 667.17, for a total term of 20 years.[9] On counts 3 and 4 (first degree residential robbery), the court sentenced Nelson to consecutive terms of one-third the middle term of four years (16 months), plus one-third of 10 years (three years four months) for the firearm enhancement pursuant to section 12022.53, subdivision (b), for a total term of four years eight months on each count. On counts 11 and 12 (false imprisonment by violence), the court sentenced Nelson to consecutive terms of one-third the middle term of two years (eight months), plus one-third the middle term of four years (16 months) for the firearm enhancement pursuant to section 12022.5, subdivision (a), for a total term of two years on each count. On counts 19 and 20 (attempted witness dissuasion), the court sentenced Nelson to consecutive terms of one-third the middle

---

[8] The trial court granted the People's motion to strike one of the prior prison term allegations because the former prior prison term did not qualify for enhancement pursuant to section 667.5, subdivision (b).

[9] The trial court imposed the police officer impersonation enhancement on count 22 only.

9

term of two years for a total term of eight months on each count. On count 21 (assault of Jose with a semiautomatic firearm), the court imposed a consecutive term of one-third the middle term of six years (two years), plus one-third the middle term of four years (16 months) for the firearm enhancement pursuant to section 12022.5, subdivision (a), for a total term of three years four months. The court also imposed an additional two years for the two prior prison terms pursuant to section 667.5, subdivision (b).[10]

The trial court made detailed comments regarding its sentencing decisions:

> "[L]et me start with counts 21 and 22. They are violent assaults. So . . . they can be consecutive because they're separate victims. . . .
>
> "As to counts three and four, again, there are separate victims, so . . . those two can be consecutive to each other. And the question is whether they have to be stayed, in light of [the] other counts.
>
> "My view is that, certainly, with respect to counts 21 and 22, there's a different and independent criminal objective than assault with a firearm[] [and] when you're talking about first degree residential robbery[] . . . there were numerous assaults. The assaults occurred throughout the course of the

---

[10] On counts 5 and 6 (making criminal threats), 13 and 16 (first degree residential burglary), and 14 and 15 (assault with a firearm), the trial court imposed and stayed pursuant to section 654 upper term sentences plus upper term sentences for the firearm enhancements.

defendant committing the numerous crimes on which he was convicted, including when the victims were on the ground, which the court considers part of a separate . . . sadistic episode, apart from the robbery.

"I think the defendant's objective in committing first degree robbery involves taking property from the victims while in the residence, so very different from assault with a firearm. And my view is they can be run consecutively. And it's a violent crime, so we can have consecutive counts for each victim.

"And then, counts 11 and 12, false imprisonment that occurred while the victims were on the ground in the kitchen, again . . . as to that incident, the defendant, ha[d] . . . a sadistic objective, independent . . . of robbery. The facts—what he did in those circumstances while the victims were on the ground, including tasering and threatening the victims, was violent. So I think those, also, can be run consecutive to each other because there were two victims. . . .

"Counts 5 and 6 are criminal threats. . . . [C]riminal threats were occurring throughout the course of the numerous crimes. . . . [I]n my view of the false imprisonment and the gun assault, the false imprisonment occurring and the gun assault while the victims are on the ground, I do think that the criminal threats were part of the same objective.

11

"I'm inclined to stay [the sentences on counts 5 and 6].

"[C]ounts 19 and 20, the dissuading witness counts, are consecutive because they occurred on different occasions to the other counts, and I think there was a different objective for each witness.  So I think they would be consecutive to each other, as well. . . .

"[T]o those counts to which . . . I am choosing to run consecutively, I'm also running one-third the mid term of the firearm enhancement on each of those counts because . . . there were different criminal objectives . . . for each of these. . . .

"[U]nder the circumstances of this case, the way that the gun was used in the course of each of the different crimes—and I've explained why I think those crimes that I may run consecutively have different objectives—I think the use of the gun within those different objectives allows me to run those consecutively, as well.

"I recognize I have the discretion to strike the firearm enhancements, and I'm declining to exercise that discretion."

The trial court also identified aggravating factors it stated supported its decision to impose consecutive sentences, including Nelson's "significant criminal history," the "violent, brazen, and callous" crimes that "truly demonstrate utter lack of empathy or consideration of others," and the likelihood that Jose and

Catherine would be affected by the crimes "for the rest of their lives." The court further observed that Nelson had "shown no remorse, absolutely no remorse," and that the court was "convinced [Nelson], . . . someone capable of committing this type of a crime, [would] do it again, given the chance."

> The trial court concluded its sentencing remarks as follows: "I want to make it clear for the appellate court—my intention is to sentence the defendant to the maximum amount of time. If the appellate court finds that I'm mistaken in the counts that I'm staying pursuant to Penal Code section 654 or any allegations, my intent is to impose consecutive time on those counts and any allegations. So I want to make that clear for the record."

Nelson filed a timely appeal.

## DISCUSSION

A. *Nelson's Sentence Does Not Violate Section 654*

1. *Governing law and standard of review*

Section 654, subdivision (a), provides, "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."

The determination whether a defendant may be subjected to multiple punishment under section 654 requires a two-step inquiry. First, the court considers whether the different crimes were completed by a single physical act. If so, the defendant may be punished only once for the single act. (*People v. Corpening* (2016) 2 Cal.5th 307, 311 (*Corpening*).) If more than a single act is

13

involved, that is, a "course of conduct," then the court considers whether "that course of conduct reflects a single "'intent and objective'" or multiple intents and objectives." (*Id.* at p. 311.) If multiple acts were pursued with a single criminal intent and objective, "'"'the defendant may be punished for any one of such offenses but not for more than one.'"'" (*People v. Jackson* (2016) 1 Cal.5th 269, 354 (*Jackson*); accord, *Corpening*, at p. 311.)

"Whether multiple convictions are based upon a single act is determined by examining the facts of the case." (*People v. Mesa* (2012) 54 Cal.4th 191, 196; accord, *Corpening*, *supra*, 2 Cal.5th at p. 312.) Similarly, "[i]ntent and objective are factual questions for the trial court, which must find evidence to support the existence of a separate intent and objective for each sentenced offense." (*Jackson*, *supra*, 1 Cal.5th at p. 354; accord, *People v. Vasquez* (2020) 44 Cal.App.5th 732, 737.)

"'Whether section 654 applies in a given case is a question of fact for the trial court, which is vested with broad latitude in making its determination. [Citations.] Its findings will not be reversed on appeal if there is any substantial evidence to support them. [Citations.] We review the trial court's determination in the light most favorable to the respondent and presume the existence of every fact the trial court could reasonably deduce from the evidence.'" (*People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1378; accord, *People v. Osband* (1996) 13 Cal.4th 622, 731.)

> 2. *Substantial evidence supports the trial court's determination that section 654 does not bar separate punishment for robbery, false imprisonment, and assault with a semiautomatic firearm*

Nelson contends the robbery, false imprisonment, and firearm assaults consisted of a single physical act—the use of force

14

and fear to commit a robbery. He alternatively argues that if he committed the crimes in a course of conduct, he had a single intent and objective—to rob Jose and Catherine.

The trial court disagreed, finding that Nelson committed "numerous assaults," which the court described as "part of a separate . . . sadistic episode, apart from the robbery." The court found that Nelson's objective in committing the robbery—taking property from Jose and Catherine while in their home—was "very different" from assaulting them with a semiautomatic firearm. The trial court likewise found that Nelson's objective in falsely imprisoning Jose and Catherine through violence—confining Jose and Catherine in the kitchen by repeatedly shocking them with a Taser and threatening to kill them—was "sadistic" and independent of the objective of taking their property. In sum, the trial court concluded that Nelson's violent assaults of Jose and Catherine with the gun and the Taser were separate from, and unnecessary to accomplish, the robbery. Substantial evidence supports the trial court's findings.[11] (See *People v. Nguyen* (1988) 204 Cal.App.3d 181, 191 [section 654 "cannot, and should not, be stretched to cover gratuitous violence or other criminal acts far

---

[11] The only case Nelson cites in support of his contention that the robbery, false imprisonment, and firearm assaults consisted of a single physical act, *Corpening*, *supra*, 2 Cal.5th 307, demonstrates the opposite. The defendant in *Corpening* was convicted of carjacking and robbery "based on the same forceful taking of a vehicle." (*Id.* at p. 309.) The Supreme Court held that section 654 barred consecutive sentences because "the same taking [], according to the prosecution, accomplished the crimes of both robbery and carjacking." (*Ibid.*) A single vehicle taking in no way resembles Nelson's series of separate criminal acts against Jose and Catherine.

beyond those reasonably necessary to accomplish the original offense"]; see also *People v. Cleveland* (2001) 87 Cal.App.4th 263, 271-272 [trial court did not err in finding defendant "harbored divisible intents in committing two separate crimes—robbery and attempted murder" where amount of force used to steal radio was "far more than necessary"].)

Nelson also argues the trial court violated section 654 when it used "the same aspect—the criminal act of using a gun" to impose firearm enhancements on each robbery, false imprisonment, and semiautomatic firearm assault count. In *People v. Ahmed* (2011) 53 Cal.4th 156 the Supreme Court held sentence enhancements may be subject to section 654 provided the specific sentencing statutes do not address whether more than one enhancement may be imposed. (*Id.* at p. 159.) The Court held that, when applied to multiple enhancements for a single crime, separate enhancements may be applied to different aspects of the same substantive offense (*id.* at p. 163), but "section 654 bars multiple punishment for the same aspect of a criminal act." (*Id.* at p. 164.)

Nelson does not challenge the trial court's imposition of both a firearm enhancement and a police impersonation enhancement on count 22 (assault of Catherine with a semiautomatic firearm). And, contrary to Nelson's claim, the trial court did not impose multiple punishment for the same aspect of a single criminal act. The trial court separately punished Nelson for six separate crimes and six distinct uses of a gun: brandishing and racking the gun to subdue Jose and Catherine upon entering their home; using the gun to compel Jose and Catherine to move to the kitchen and lie face down on the floor; and putting the gun to Jose's head and threatening to shoot Catherine and permanently disable her. The court did not violate section 654 when it imposed firearm

16

enhancements for Nelson's six separate uses of a gun in the commission of robbery, false imprisonment, and assault with a semiautomatic firearm of two victims.[12]  (Cf. *People v. Calles* (2012) 209 Cal.App.4th 1200, 1217-1218 [section 654 prohibited court's use of same act to sentence defendant for the offense of fleeing the scene of an accident and to enhance his vehicular manslaughter conviction based on the same conduct of fleeing the scene of a crime].)

B.      *Nelson's Assault with a Firearm Convictions Must Be Reversed*

        The amended information charged Nelson with two counts of assault with a firearm (counts 14 and 15).  The People amended the information at trial to conform to proof and added two counts of assault with a semiautomatic firearm (counts 21 and 22).  The jury convicted Nelson on all four counts.  Nelson argues, and the People agree, that the convictions of assault with a firearm must be reversed because assault with a firearm is a lesser included offense of assault with a semiautomatic firearm.

        "The law prohibits simultaneous convictions for both a greater offense and a lesser offense necessarily included within it, when based on the same conduct.  [Citation.]  'When the jury expressly finds defendant guilty of both the greater and lesser offense . . . the conviction of [the greater] offense is controlling, and the conviction of the lesser offense must be reversed.'"  (*People v.*

---

[12]      Nelson acknowledges the trial court did not violate section 654 by sentencing him separately for crimes committed against two victims.  (See *People v. Correa* (2012) 54 Cal.4th 331, 341 [section 654 does not preclude imposition of separate sentences for crimes of violence committed against different victims]; *People v. Oates* (2004) 32 Cal.4th 1048, 1063 [same].)

*Milward* (2011) 52 Cal.4th 580, 589.) "[I]f the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former." (*People v. Reed* (2006) 38 Cal.4th 1224, 1227.) "'[A] statutorily lesser included offense is subject to the bar against multiple convictions in the same proceeding . . . .'" (*Id.* at p. 1229.)

Here, the greater offense, assault with a semiautomatic firearm (§ 245, subd. (b)), includes all of the elements of the lesser offense, assault with a firearm (§ 245, subd. (a)(2)). Nelson therefore may not be convicted of both offenses. We accordingly reverse the assault with a firearm convictions (counts 14 and 15).

C.      *One of Nelson's Burglary Convictions Must Be Reversed*

The People charged Nelson with two counts of first degree residential burglary (counts 13 and 16), one count against Jose and one count against Catherine. The jury convicted Nelson on both counts. Nelson argues, and the People agree, that one of the burglary convictions must be reversed because Nelson committed only one burglary.

Section 459 defines the crime of burglary as entry into "any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building . . . with intent to commit grand or petit larceny or any felony . . . ." The elements of first degree burglary are (1) entry into a structure currently being used for dwelling purposes and (2) with the intent to commit a theft or a felony. (§§ 459, 460; *People v. Sample* (2011) 200 Cal.App.4th 1253, 1261.)

18

The People concede "[i]t is undisputed that [Nelson] entered a single dwelling, the Chavez residence."  We therefore reverse Nelson's conviction of first degree residential burglary as to Jose (count 16).

D.  *The Two One-year Prior Prison Term Enhancements Must Be Stricken*

Nelson argues, and the People agree, that both one-year prior prison term enhancements must be stricken.  Effective January 1, 2020, Senate Bill No. 136 (2019-2020 Reg. Sess.) amended section 667.5, subdivision (b), to provide a one-year prior prison term sentence enhancement only for sexually violent offenses, as defined in Welfare and Institutions Code section 6600, subdivision (b).  (*People v. Gastelum* (2020) 45 Cal.App.5th 757, 772; *People v. Jennings* (2019) 42 Cal.App.5th 664, 681.)  Senate Bill No. 136 applies retroactively to Nelson because his sentence was not final at the time the new law became effective on January 1, 2020.  (*People v. Winn* (2020) 44 Cal.App.5th 859, 872 ["Because [defendant's] conviction is not yet final, he is entitled to the retroactive benefit of the change in law."]; *Jennings*, at p. 682 ["Senate Bill No. 136's . . . amendment to section 667.5, subdivision (b) applies retroactively to all cases not yet final as of its January 1, 2020, effective date."]; see *In re Estrada* (1965) 63 Cal.2d 740, 744-745.)

The People concede that neither of Nelson's prior prison terms was for a sexually violent offense.  We thus strike the two one-year section 667.5, subdivision (b), enhancements from Nelson's sentence.  (*People v. Smith* (2020) 46 Cal.App.5th 375, 396; *People v. Gastelum*, *supra*, 45 Cal.App.5th at p. 772.)

19

E.     *The Sentences for Attempted Witness Dissuasion Must Be Modified*

The jury convicted Nelson on two counts of attempted witness dissuasion pursuant to section 136.1, subdivision (a)(2) (counts 19 and 20).  The trial court imposed consecutive terms of one-third the middle term of two years (eight months) on each count.  The People assert, and Nelson agrees, that Nelson's sentences for attempted witness dissuasion must be corrected because section 1170.15 requires the trial court to impose the full middle term on each count if it imposes consecutive sentences.

Section 1170.15 states:

"Notwithstanding subdivision (a) of Section 1170.1 which provides for the imposition of a subordinate term for a consecutive offense of one-third of the middle term of imprisonment, if a person is convicted of a felony, and of an additional felony that is a violation of Section 136.1 or 137 and that was committed against the victim of . . . the first felony . . . the subordinate term for each consecutive offense that is a felony described in this section shall consist of the full middle term of imprisonment for the felony for which a consecutive term of imprisonment is imposed . . . ."

Section 1170.15 "requires the trial court to impose the full middle term of imprisonment only if a consecutive sentence is imposed. The section does not require the trial court to impose a consecutive sentence, but instead indicates that if the trial court chooses consecutive sentencing it must impose a full-term sentence for the witness dissuasion count." (*People v. Woodworth* (2016) 245 Cal.App.4th 1473, 1479.)

20

The People request we modify Nelson's sentence to impose the full consecutive terms for the attempted witness dissuasion counts. Nelson argues remand is appropriate for the trial court to determine in the first instance whether to impose consecutive or concurrent terms.

"Generally, when the record shows that the trial court proceeded with sentencing on the erroneous assumption it lacked discretion, remand is necessary so that the trial court may have the opportunity to exercise its sentencing discretion at a new sentencing hearing." (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1228; see *People v. Johnson* (2019) 32 Cal.App.5th 26, 29 [remand appropriate when reviewing court would otherwise have to speculate about what trial court may have done had it been fully aware of its sentencing discretion].)

The record here does not reflect that the trial court acted on the erroneous assumption it lacked discretion to impose the attempted witness dissuasion sentences concurrently. The trial court explained it was imposing consecutive sentences for attempted witness dissuasion because those crimes "occurred on different occasions to the other counts, and . . . there was a different objective for each witness." (See Cal. Rules of Court, rule 4.425(a)(3) [that "crimes were committed at different times or separate places" supports imposing consecutive rather than concurrent sentences].) Moreover, the trial court unequivocally stated its intention to sentence Nelson to the maximum prison term available. The court described Nelson's treatment of Jose and Catherine as "sadistic," and emphasized Nelson's "significant criminal history," "utter lack of empathy," and that Nelson had "shown no remorse, absolutely no remorse." As further evidence of its intention to impose the longest sentence possible, the trial court expressly acknowledged its discretion to strike the firearm

21

enhancements, and declined to do so. Reviewing this record, we conclude there is no possibility the trial court would on remand impose concurrent sentences on the attempted witness dissuasion counts. (See *People v. Jones* (2019) 32 Cal.App.5th 267, 274, 275 ["Besides not exercising its discretion for leniency when it could have, the trial court made clear its intention to impose the most stringent sentence it could justifiably impose"; "[u]nder these circumstances, we are confident the court would not strike the felony prior and its resulting enhancement out of lenience toward defendant"].) We accordingly modify Nelson's sentence to impose consecutive full middle term sentences of two years on each count of attempted witness dissuasion (counts 19 and 20).[13]

## DISPOSITION

Nelson's convictions of assault with a firearm (counts 14 and 15) and one conviction of first degree residential burglary (count 16) are reversed. The two one-year prior prison term enhancements imposed pursuant to section 667.5, subdivision (b), are stricken. The sentences on each count of attempted witness dissuasion (counts 19 and 20) are modified to impose consecutive sentences of the full middle term of two years on each count, resulting in an aggregate state prison term of 40 years eight months. The judgment is affirmed in all other respects. The

---

[13] Nelson argues we should remand for resentencing because the trial court improperly used the same facts to support consecutive sentences and the upper terms on count 22 (assault of Catherine with a semiautomatic firearm) and the stayed counts. Nelson acknowledges he did not make this objection at sentencing. Nelson thus forfeited this argument on appeal. (*People v. Scott* (1994) 9 Cal.4th 331, 353; *People v. De Soto* (1997) 54 Cal.App.4th 1, 7-8; *People v. Erdelen* (1996) 46 Cal.App.4th 86, 91.)

superior court is directed to prepare an amended abstract of judgment and forward it to the Department of Corrections and Rehabilitation.

McCORMICK, J.*

We concur:

PERLUSS, P. J.

SEGAL, J.

---

*        Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.