Filed 6/17/26  P. v. Barrios CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>PAUL BARRIOS,<br><br>　　　Defendant and Appellant. | F090690<br><br>(Super. Ct. No. F22905169)<br><br>**OPINION** |

-ooOoo-

## THE COURT[*]

APPEAL from a judgment of the Superior Court of  County.  Alvin M. Harrell III, Judge.

Wallin & Klarich, Jonathan M. Lynn, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Amanda D. Cary and Lewis A. Martinez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Defendant Paul Barrios sexually assaulted his wife's younger brother, and he was found guilty on three counts.  He was sentenced to 25 years to life on count l plus an

---

[*] Before Levy, Acting P. J., Meehan, J. and Snauffer, J.

eight-year consecutive term on count 3.  The trial court also imposed a six-year term on count 2, but it stayed this sentence pursuant to Penal Code section 654.[1]

Barrios appealed.  Our court reversed the conviction on count 3 and remanded the matter for further proceedings.  (*People v. Barrios* (Jun. 2, 2025, F087136) [nonpub. opn.] (*Barrios*).)[2]  On remand, the prosecutor opted not to retry Barrios on count 3, and the trial court sentenced him to 25 years to life on count l plus a six-year consecutive term on count 2.  Barrios again appealed.

On appeal, he argues that the trial court erred when it refused to stay the sentence on count 2 pursuant to section 654 because the conviction on count 1 and the conviction on count 2 were based on the same physical act.  The People agree, as do we.  Accordingly, we remand the matter for resentencing.

<u>**PROCEDURAL HISTORY AND BACKGROUND**</u>

## I.  Charges, Convictions, and Sentence

In *Barrios*, *supra*, F087136, our court summarized the charges, convictions, and sentence as follows:

> "On November 7, 2022, the Fresno County District Attorney filed an information charging Barrios with sodomy of a child 10 years old or younger (Pen. Code, § 288.7, subd. (a); count l); sodomy of a person under age 14 with a 10-year age difference (§ 286, subd. (c)(l); count 2), and committing a lewd or lascivious act upon a child under age 14 using force, violence, duress, menace, or fear (§ 288, subd. (b)(l); count 3).

> "On January 13, 2023, Barrios was found guilty by a jury on all counts.  [¶] … [¶]

> "On November 6, 2023, the trial court sentenced Barrios.  The court imposed an aggregate term of 25 years to life plus eight years, consisting of:  25 years to life on count 1 and eight years (the middle term) on count 3.

---

[1]  Undesignated statutory references are to the Penal Code.

[2]  On January 27, 2026, we granted Barrios's request for judicial notice of the record on appeal and opinion in *Barrios*, *supra*, F087136.

The court also imposed a term of six years on count 2 (the middle term), but it stayed this sentence pursuant to section 654." (*Barrios*, *supra*, F087136, fn. omitted.)

## II.  Factual Summary from *Barrios*

In Barrios's direct appeal, *Barrios*, *supra*, F087136, our court summarized the facts related to the charges.  We provide that factual summary here.

**"Prosecution Case**

"***A.R.'s Testimony***

"A.R. was born in December of 2004.  He had three brothers and three sisters. One of his sisters, L.R., married Barrios.  A.R. spent time at L.R. and Barrios's apartment in Fresno.  Sometimes, A.R. was alone with Barrios in the apartment.  A.R. was 10 to 12 years old during this time.

"On one such occasion, Barrios asked A.R. if he wanted to 'play fight.'  This was something they had done before.  However, this time, Barrios bent A.R. over the couch. Barrios then pulled down the bottom half A.R.'s clothing and his own clothing.  He put his penis into A.R.'s anal cavity.  A.R. started crying.  Eventually, A.R. felt something come out of Barrios's penis, and Barrios stopped.

"Barrios told A.R. that if he ever told anyone what happened, Barrios would kill A.R.'s sister.  A.R. believed Barrios because he knew that Barrios owned firearms.  So, A.R. did not immediately tell anyone about what happened.

"On another occasion, Barrios grabbed A.R.'s head and forced A.R. to orally copulate him.  A.R. could not remember if anyone else was at the apartment when this occurred.  A.R. did not tell police officers about this incident or testify about this incident at the preliminary hearing because he did not want to talk about it.

"The first person A.R. told about what Barrios had done to him was his mother. A.R. was having an anxiety attack, and his mother drove him to the hospital.  His mother's former significant other was in the car as well.  While they were in the car, A.R.

3.

started screaming. A.R.'s mother asked him what was wrong, and he told her, in general terms, what had happened. He had not planned on telling his mother because, at the time, he was ashamed.

"***D.P.'s Testimony***

"D.P. had six children, including A.R. and L.R. L.R. married Barrios, and they had children together. At some point, they lived together in an apartment in Fresno. That apartment was 'no more than two light streets away' from where D.P. and A.R. lived.

"A.R. would go to that apartment. More than once, A.R. came home and told D.P. that his buttocks hurt. D.P. checked him, but she did not see anything.

"On one occasion, A.R. told D.P. that there was 'white stuff' coming out of his buttocks. D.P. did not see anything coming out of his buttocks, but she did see 'white stuff' in the toilet. D.P. asked him if anyone was touching him, but he denied it. After this incident he became angry, and he was getting in trouble at school (although one of his sisters died during this same time).

"About a year before the trial, A.R. had a panic attack. His chest hurt and he could not breathe. D.P. and her boyfriend took A.R. to the hospital. D.P.'s boyfriend drove. While they were in the car, D.P. asked A.R. what was wrong. A.R. told her that he had been molested.

"When they got to the hospital, D.P. told a nurse that A.R. had been sexually assaulted. D.P. also asked A.R. if it was Barrios who molested him, and A.R. said yes. After they got home from the hospital, D.P. called the police.

"***L.R.'s Testimony***

"L.R. was previously married to Barrios and had children with him. They had an 'on and off' relationship from 2013 to 2020.

"Barrios was born in August of 1989.

"In July of 2014, L.R. moved into an apartment in Fresno. L.R. lived in the apartment with her three children (one of which she had with Barrios). Barrios did not

4.

live there, but he would stay there on his days off. He owned firearms and would bring them to the apartment. A.R. 'came over a lot' to play with the three children. At times, Barrios and A.R. were alone in the apartment. Barrios and A.R. were close. They played 'a lot' of video games together.

"L.R. moved out of the apartment in June of 2015.

"***Detective Sean McInerney's Testimony***

"In November of 2021, Sean McInerney was employed as a detective with the City of Fresno.

"On November 12, 2021, McInerney interviewed A.R. regarding an allegation he made of being sexually abused. McInerney had difficulty getting information from A.R. At times, A.R. became upset, cried, and shook uncontrollably.

"A.R. described one incident, but stated it happened more than once. A.R. also told McInerney that Barrios had firearms in the apartment in Fresno. McInerney attempted to get details about the other incidents of sexual abuse, but it was 'very difficult.' Eventually, McInerney determined that A.R. 'couldn't continue with the interview because he was crying and just extremely upset,' and McInerney terminated the interview.

"Subsequently, McInerney 'conducted a check of the automated firearms system through CLETS.' This investigation showed that Barrios had two firearms registered in his name. While the database also showed the dates the firearms were purchased, McInerney did not recall those dates.

"***Officer Jeremy DeMoss's Testimony***

"Jeremy DeMoss was employed as a police officer with the City of Fresno. On November 1, 2021, DeMoss responded to a call regarding a report of molestation. When he arrived at the residence, he spoke to D.P. He then interviewed A.R.

"A.R. seemed 'very nervous,' and he had difficulty talking about the allegations of molestation. He told DeMoss that he could only remember one occasion. Eventually,

DeMoss asked him if he had been touched or penetrated.  He got 'very upset.'  He told DeMoss that it 'was the worst detail that [DeMoss] had mentioned.'  DeMoss then asked if he had been penetrated, and he 'shook his head[] yes.'  Shortly after, he threw a toy and stormed off.  Later, A.R. came back and told DeMoss that Barrios had threatened to kill his sister if he said anything.

**"Defense Case**

"R.B., Barrios's brother, testified on Barrios's behalf.  According to R.B., Barrios purchased a firearm in February of 2018.  Barrios also took possession of a different firearm from R.B. in June of 2020, which R.B. had purchased in 2017.  These are the only two firearms R.B. ever saw Barrios possess.

"Barrios also testified on his own behalf.  Starting in the summer of 2014, Barrios regularly visited L.R.'s apartment in Fresno, and he would stay overnight.  However, he was never alone with A.R., he never wrestled with A.R., and he never played video games with A.R.  Additionally, he did not own a firearm during this period.  He purchased his first firearm in 2018." (*Barrios*, *supra*, F087136.)

## III.    Prior Appeal

In Barrios's first appeal, he argued, among other things, that defense counsel was ineffective for not objecting to the use of the oral copulation incident as a basis to convict him on count 3.  We agreed, reversed the conviction on count 3, and remanded the matter for further proceedings. (*Barrios*, *supra*, F087136.)  We otherwise affirmed the judgment. (*Ibid.*)

## IV.    Proceedings on Remand

On October 17, 2025, the trial court held a status hearing.  The court offered the prosecutor the opportunity to retry Barrios on count 3, but the prosecutor declined to do so.

At the prosecutor's request, the trial court then held the sentencing hearing.  The prosecutor argued that in addition to sentencing Barrios to 25 years to life on count 1, the

6.

trial court should sentence him to a six-year consecutive term on count 2. Barrios argued that the court should once again stay the sentence on count 2.

The trial court agreed with the prosecutor, ruling as follows: "The [c]ourt stayed [the sentence on count 2] in so much as it knew that at the time he was getting 8 years for [c]ount 3. In so much as he's not getting the 8 years on [c]ount 3, the [c]ourt is exercising [its] discretion to lift the stay on [c]ount 2, and impose the [6-year] midterm consecutive to the 25 to life for [c]ount 1."

The trial court did not recalculate Barrios's actual presentence custody credits.

## V. Current Appeal

On October 31, 2025, Barrios timely filed a notice of appeal. On appeal, he argues that the trial court erred when it refused to stay the sentence on count 2 because the conviction on count 1 and the conviction on count 2 were based on the same physical act.

## DISCUSSION

## I. Applicable Law and Standard of Review

As relevant here, section 654, subdivision (a), provides: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision."

"Whether a defendant may be subjected to multiple punishment under section 654 requires a two-step inquiry, because the statutory reference to an 'act or omission' may include not only a discrete physical act but also a course of conduct encompassing several acts pursued with a single objective. [Citations.] We first consider if the different crimes were completed by a 'single physical act.' [Citation.] If so, the defendant may not be punished more than once for that act. Only if we conclude that the case involves more than a single act—i.e., a course of conduct—do we then consider whether that course of

7.

conduct reflects a single 'intent and objective' or multiple intents and objectives. [Citations.] At step one, courts examine the facts of the case to determine whether multiple convictions are based upon a single physical act. [Citation.] When those facts are undisputed … the application of section 654 raises a question of law we review de novo." (*People v. Corpening* (2016) 2 Cal.5th 307, 311–312.) However, we review the trial court's factual findings for substantial evidence. (*People v. Washington* (2021) 61 Cal.App.5th 776, 795.)

## II.  Analysis

The People agree, as do we, that the trial court erred by declining to stay the sentence on count 2. A.R. testified to only one incident of sodomy. Further, during her closing argument, the prosecutor relied on that one incident of sodomy as the basis for both count 1 and count 2. Finally, we have reviewed the record, and there is no evidence suggesting that the crimes were completed by different physical acts. Accordingly, the sentence on count 2 should have been stayed pursuant to section 654.

## DISPOSITION

The sentence is vacated. The matter is remanded to the trial court for resentencing consistent with this opinion.[3] In all other respects, the judgment is affirmed.

---

[3] While we do not address the trial court's failure to recalculate Barrios's actual days of presentence custody credits because it was not raised by Barrios and we are remanding the matter for resentencing, we note that trial courts are required to do so. (See § 2900.1; *People v. Buckhalter* (2001) 26 Cal.4th 20, 41.)

We also note that the abstract of judgment includes Barrios's conviction on count 3, even though the conviction was reversed and the prosecutor elected not to retry Barrios on that count.