Filed 6/25/21  P. v. Epperson CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>TAVARIE EPPERSON,<br><br>　　　Defendant and Appellant. | F081044<br><br>(Super. Ct. No. 14CM1949HTA)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kings County.  Donna L. Tarter, Judge.

Stephen M. Hinkle, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Christina Hitomi Simpson and Eric L. Christoffersen, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]　　　Before Franson, Acting P.J., Meehan, J. and Snauffer, J.

# INTRODUCTION

Defendant Tavarie Epperson appeals from the trial court's order of February 13, 2020, denying his Penal Code section 1170.95[1] petition for relief from his attempted murder conviction under Senate Bill No. 1437 (2017–2018 Reg. Sess. (Senate Bill 1437)). The People contend that the trial court did not commit error when it denied the petition because, pursuant to this court's decision in *People v. Larios* (2019) 42 Cal.App.5th 956, 970, review granted February 26, 2020, S259983 (*Larios*), the section 1170.95 petition process does not afford relief to those convicted of attempted murder. However, they acknowledge this court has held that Senate Bill 1437 applies to attempted murder and that defendants whose convictions are not yet final are entitled to relief on direct review under the *Estrada* rule.[2] (*People v. Medrano* (2019) 42 Cal.App.5th 1001, 1018–1019, review granted Mar. 11, 2020, S259948 (*Medrano*); accord, *People v. Sanchez* (2020) 46 Cal.App.5th 637, 644, review granted June 10, 2020, S261768 (*Sanchez*); cf. *People v. Gentile* (2020) 10 Cal.5th 830, 847–848 [convicted murderers are required to seek relief via § 1170.95 petition process] (*Gentile*).) They do not take a contrary position with respect to these decisions.

For the reasons set forth below, we conclude that defendant is entitled to relief under Senate Bill 1437; we reverse his attempted murder conviction, and we remand for further proceedings. (*Medrano*, *supra*, 42 Cal.App.5th at pp. 1018–1019, review granted; accord, *Sanchez*, *supra*, 46 Cal.App.5th at p. 644, review granted; see *Gentile*, *supra*, 10 Cal.5th at pp. 847–848 ["Senate Bill 1437 eliminates natural and probable consequences liability for murder regardless of degree."].)

---

[1]    All further statutory references are to the Penal Code unless otherwise specified.

[2]    *In re Estrada* (1965) 63 Cal.2d 740, 744 (*Estrada*).)

2.

# PROCEDURAL HISTORY

Defendant, who was armed with a shotgun, and two other men robbed victims D.R. and Rachel T. at a motel.[3]  One of the men shot D.R. in the leg with a pistol during the incident and then fired the pistol again as D.R. fled.  Defendant was arrested several weeks later and charged with the attempted murder of D.R. (§§ 664/187, subd. (a); count 1), the robbery of Rachel (§ 211; count 2), the attempted robbery of D.R. (§§ 664/211; count 3), and burglary (§ 459; count 4).  The charging document also alleged that the attempted murder of D.R. was premeditated, willful and deliberate (§ 189), and that defendant personally used a firearm to rob Rachel and commit burglary in counts 2 and 4 (§§ 12022.5, subd. (a), 12022.53, subd. (b)).

Defendant's first trial ended in a mistrial after the jury deadlocked on all counts.  At the close of the People's case-in-chief in the second trial, the trial court granted the prosecutor's motion to amend count 3 from the attempted robbery of D.R. to the robbery of D.R.  The jury subsequently convicted defendant on all counts, found true the premeditation allegation attached to count 1, and found true the firearm enhancements attached to counts 2 and 4.

Defendant was sentenced to an aggregate term of 27 years to life in prison.  The court imposed a term of seven years to life on count 1, the attempted murder of D.R.  On count 2, the robbery of Rachel, the court imposed the aggravated term of nine years, plus the aggravated term of 10 years for personal use of a firearm under section 12022.5, subdivision (a), stayed, and 10 years for personal use of a firearm under section 12022.53, subdivision (b).  On count 3, the robbery of D.R., the court imposed a one-year term.  Finally, on count 4, burglary, the court imposed the aggravated term of

---

**3**　　This is defendant's second appeal in this matter.  We take judicial notice of our prior opinion in *People v. Epperson* (Aug. 15, 2019, F072174) [nonpub. opn.].  (Evid. Code, §§ 452, subd. (d), 459.)

six years, plus 10 years for personal use of a firearm under section 12022.5, subdivision (a), stayed under section 654.

Defendant appealed and raised claims relating to his conviction for the robbery of D.R. (count 3). Defendant claimed his right to due process was violated when, at the close of the People's case-in-chief, the trial court permitted the prosecutor to amend count 3 from attempted robbery to robbery, and he sought reversal of the conviction. Relatedly, and dependent upon our agreement that he was entitled to reversal of his conviction in count 3 for the robbery of D.R., he sought reversal of his conviction for the attempted murder of D.R. on the ground that the jury may have impermissibly relied on the robbery of D.R. in finding that the attempted murder of D.R. was a natural and probable consequence of robbery.[4] Finally, if we rejected his challenge to his robbery conviction in count 3, he argued that the trial court erred in failing to stay the sentence on count 3 under section 654, which prohibits multiple punishments for both crimes completed by a single act and a criminal course of conduct committed pursuant to a single intent and objective. (*People v. Corpening* (2016) 2 Cal.5th 307, 311.)

The People did not concede any issues.

---

[4] With respect to the attempted murder count, in addition to direct aider and abettor liability, the jury was instructed on the natural and probable consequences doctrine, under which "'"[a] person who knowingly aids and abets criminal conduct is guilty of not only the intended crime [target offense] but also of any other crime the perpetrator actually commits [nontarget offense] that is a natural and probable consequence of the intended crime."'" (*People v. Favor* (2012) 54 Cal.4th 868, 874.) Under that theory, attempted murder was the nontarget offense and robbery was the target offense. In briefing submitted prior to the passage of Senate Bill 1437, defendant conceded that if his attempted murder conviction on a natural and probable consequences theory was based on the robbery of Rachel, it was valid. He argued, however, that given his entitlement to reversal of his conviction for robbing D.R., the jury may have convicted him of attempted murder based on a legally invalid theory: that the attempted murder of D.R. was the natural and probable consequence of the robbery of D.R. We rejected his argument that he was entitled to reversal of his conviction for robbing D.R., which foreclosed his related claim of instructional error. As discussed herein, defendant's judgment of conviction is not yet final and, therefore, Senate Bill 1437 entitles him to relief from his attempted murder conviction, which, as stated, which may have been based on a now-invalid natural and probable consequences theory. (*Medrano*, *supra*, 42 Cal.App.5th at pp. 1018–1019, review granted.)

In our now-vacated nonpublished opinion filed on September 22, 2017, we rejected defendant's claim that the amendment of count 3 at trial from attempted robbery to robbery violated his right to due process, which mooted his derivative challenge to his attempted murder conviction on the ground that the jury may have relied on a legally inadequate theory to convict him.  (*People v. Epperson*, review granted Jan. 10, 2018, S245034.)  We agreed that defendant's sentence for robbing D.R. should have been stayed under section 654, however, and we stayed the sentence on count 3.  We otherwise affirmed the judgment.

The California Supreme Court granted review and returned the case to us with directions to vacate our opinion and reconsider the cause in light of Senate Bill 1437 and Senate Bill No. 620 (Stats. 2017, 2017–2018 Reg. Sess., ch. 682, §§ 1, 2, pp. 1–4).  (*People v. Epperson*, review granted.)  Following supplemental briefing and in an unpublished opinion that predated *Larios* and *Medrano*, we rejected defendant's claim that he was entitled to relief under Senate Bill 1437 on direct appeal, concluding that he must seek relief in the trial court in the first instance via the petition procedure set forth in section 1170.95.  However, in addition to staying the sentence on count 3 under section 654, we modified the opinion and remanded the matter to allow the trial court to exercise its discretion in the first instance with respect to whether to strike the firearm enhancements in light of Senate Bill No. 620.

On remand, the trial court declined to exercise its discretion to strike the firearm enhancements.  Relying on this court's opinion in *Larios*, the trial court denied defendant's petition for relief under section 1170.95 on the ground that the petition process does not apply to attempted murder convictions.  (*Larios*, *supra*, 42 Cal.App.5th at p. 970, review granted.)  The matter is now before us again following defendant's timely notice of appeal challenging the denial of his petition under section 1170.95.

In accordance with this court's decision in *Medrano*, which was issued concurrently with the decision in *Larios*, we conclude that defendant, whose conviction

for attempted murder may have been based on a natural and probable consequences theory of liability, is entitled to relief under Senate Bill 1437 on direct appeal. (*Medrano*, *supra*, 42 Cal.App.5th at pp. 1018–1019, review granted; accord, *Sanchez*, *supra*, 46 Cal.App.5th at p. 644, review granted.) Therefore, we reverse his conviction for attempted murder and remand this matter to the trial court for further proceedings.

## FACTUAL SUMMARY

On June 19, 2014, D.R. and Rachel were at a motel in Hanford where D.R. had rented a room. At approximately 10:30 p.m., D.R. stepped outside the room to smoke a cigarette. He noticed a black sport utility vehicle drive by with its lights off. Minutes later, as he stood there smoking, three men came up the stairs. The first man, who was armed with a pistol, approached and told D.R. to give him everything D.R. had. The man then cocked the gun and fired, hitting D.R. in the leg. As D.R. turned and ran, the man fired again, hitting an exterior wall of the motel.[5]

Rachel, who was inside the motel room, heard three gunshots and then the three men came into the motel room. Defendant, who had a distinctive tattoo under his eye, pointed a shotgun in Rachel's face and asked, "[W]here is all the stuff at?" As she knelt on the floor pleading for her life, the other two men took some items that belonged to her and some items that belonged to D.R. All three men then fled.

## DISCUSSION

### I.     Senate Bill 1437

"Senate Bill 1437 'amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was

---

**5**     D.R. testified the gunman fired once as he fled; Rachel testified she heard three gunshots. Law enforcement officers recovered two bullet casings from the ground and located two bullet holes in the exterior wall of the motel.

not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § l, subd. (f).)

"To further that purpose, Senate Bill 1437 added three separate provisions to the Penal Code. First, to amend the felony murder rule, Senate Bill 1437 added section 189, subdivision (e): 'A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2.' …

"Second, to amend the natural and probable consequences doctrine, Senate Bill 1437 added section 188, subdivision (a)(3) (section 188(a)(3)): 'Except [for felony-murder liability] as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime.'

"Third, Senate Bill 1437 added section 1170.95 to provide a procedure for those convicted of felony murder or murder under the natural and probable consequences doctrine to seek relief under the two ameliorative provisions above." (*Gentile*, *supra*, 10 Cal.5th at pp. 842–843.)

## II.     Senate Bill 1437 Applies to Attempted Murder

In *Larios*, *Medrano*, and *Sanchez*, this court considered whether Senate Bill 1437 applies to attempted murder and concluded that it does.[6] (*Larios*, *supra*, 42 Cal.App.5th

---

[6]     We declined to follow *People v. Munoz* (2019) 39 Cal.App.5th 738, review granted November 26, 2019, S258234, and *People v. Lopez* (2019) 38 Cal.App.5th 1087, review granted November 13, 2019, S258175, in which the Court of Appeal for the Second District concluded

at pp. 964–968, review granted; *Medrano*, *supra*, 42 Cal.App.5th at pp. 1012–1016, review granted; *Sanchez*, *supra*, 46 Cal.App.5th at pp. 642–644, review granted.) *Medrano* explained, "Prior to Senate Bill 1437's enactment, a person who knowingly aided and abetted a crime, the natural and probable consequences of which was attempted murder or murder, could be convicted of not only the target crime but also of the resulting attempted murder or murder, but not first degree murder. [Citations.] [¶] '"By its very nature, aider and abettor culpability under the natural and probable consequences doctrine is not premised upon the intention of the aider and abettor to commit the nontarget offense because the nontarget offense was not intended at all. It imposes vicarious liability for any offense committed by the direct perpetrator that is a natural and probable consequence of the target offense."'" (*Medrano*, *supra*, at p. 1012, review granted, quoting *People v. Chiu* (2014) 59 Cal.4th 155, 164; accord, *Larios*, *supra*, at pp. 964–965, review granted; *Sanchez*, *supra*, at pp. 642–644, review granted [pointing out that, in addition, "[l]imiting Senate Bill No. 1437's malice imputing prohibition to murder has the absurd consequence of incentivizing murder"].)

"Senate Bill 1437 precludes any imposition of vicarious liability under the natural and probable consequences doctrine if the charged offense requires malice aforethought. Because malice cannot be imputed to a defendant who aids and abets a target offense without the intent to kill, the natural and probable consequences doctrine is no longer a viable theory of accomplice liability for attempted murder. Put differently, since 'implied malice cannot support a conviction of an *attempt* to commit murder' [citations], the

---

that Senate Bill 1437 does not apply to attempted murder. *Larios* and *Medrano* discussed the issue in detail, and we need not repeat that analysis here. (*Larios*, *supra*, 42 Cal.App.5th at pp. 963–968, review granted; *Medrano*, *supra*, 42 Cal.App.5th at pp. 1007–1008 & 1013–1016, review granted.) It suffices to note that *Larios* and *Medrano* reached the contrary conclusion after careful statutory analysis, and they found the reasoning in *Munoz* and *Lopez* unpersuasive on this point. (*Larios*, *supra*, at pp. 966–968, review granted; *Medrano*, *supra*, at pp. 1014–1015, review granted.) The California Supreme Court is now poised to resolve the split of authority on this issue in *Lopez*.

current version of section 188 requires proof the aider and abettor acted with the intent to kill while aiding and abetting the target offense." (*Medrano*, *supra*, 42 Cal.App.5th at p. 1013, review granted; *Larios*, *supra*, 42 Cal.App.5th at p. 966, review granted; accord, *Sanchez*, *supra*, 46 Cal.App.5th at p. 642, review granted.)

"Attempted murder … requires 'the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing.'" (*Medrano*, *supra*, 42 Cal.App.5th at p. 1014, review granted, quoting *People v. Booker* (2011) 51 Cal.4th 141, 177–178; *Larios*, *supra*, 42 Cal.App.5th at p. 967, review granted; accord, *Sanchez*, *supra*, 46 Cal.App.5th at p. 642, review granted.) "Because the crime of attempted murder is tethered to the murder statutes, i.e., it does not exist without them, there is no logical basis for applying section 188 to murder and treating the crime of attempted murder as being subject to an impliedly different and unspecified rule of law." (*Medrano*, *supra*, at p. 1015, review granted; *Larios*, *supra*, at p. 968, review granted; accord, *Sanchez*, *supra*, at p. 642, review granted.)

We agree with the analyses in *Larios* and *Medrano*, and follow their holdings on this point.

## III.   Entitlement of Relief on Direct Appeal

In *Larios*, the defendant's attempted murder conviction was final, and in interpreting Senate Bill 1437, this court concluded, "[T]he relief provided in section 1170.95 is limited to certain murder convictions and excludes all other convictions, including a conviction for attempted murder. The language and the legislative history of section 1170.95 support this conclusion. And there is a rational basis for the Legislature's decision to grant relief pursuant to section 1170.95 only to murder convictions and exclude attempted murder convictions based on judicial economy and the financial costs associated with reopening both final murder and final attempted murder convictions. In light of this unambiguous language, [the defendant] is categorically excluded from seeking relief through the section 1170.95 petitioning

9.

procedure for his attempted murder convictions, which have long been final." (*Larios*, *supra*, 42 Cal.App.5th at p. 970, review granted; accord, *Medrano*, *supra*, 42 Cal.App.5th at p. 1018, review granted; see *People v. Harris* (2021) 60 Cal.App.5th 557, 565, review granted Apr. 21, 2021, S267529 ["No court has held that Senate Bill 1437 applies retroactively to final convictions of attempted murder."].)

In *Medrano* and *Sanchez*, however, the defendants' convictions were not final. (*Medrano*, *supra*, 42 Cal.App.5th at p. 1019, review granted; *Sanchez*, *supra*, 46 Cal.App.5th at p. 644, review granted.) Pursuant to what is known as the *Estrada* rule, "we presume that newly enacted legislation mitigating criminal punishment reflects a determination that the 'former penalty was too severe' and that the ameliorative changes are intended to 'apply to every case to which it constitutionally could apply,' which would include those 'acts committed before its passage[,] provided the judgment convicting the defendant of the act is not final.' (*Estrada*, *supra*, 63 Cal.2d at p. 745.) The *Estrada* rule rests on the presumption that, in the absence of a savings clause providing only prospective relief or other clear intention concerning any retroactive effect, 'a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not.'" (*People v. Buycks* (2018) 5 Cal.5th 857, 881; accord, *People v. Frahs* (2020) 9 Cal.5th 618, 634 ["[I]n order to rebut *Estrada*'s inference of retroactivity concerning ameliorative statutes, the Legislature must 'demonstrate its intention with sufficient clarity that a reviewing court can discern and effectuate it.'"].)

*Medrano* and *Sanchez* concluded that under the *Estrada* rule, the defendants were entitled to relief from their attempted murder convictions on direct appeal. (*Medrano*, *supra*, 42 Cal.App.5th at p. 1018, review granted; *Sanchez*, *supra*, 46 Cal.App.5th at

p. 644, review granted.)[7]  This court explained, "[T]here is no clear indication in Senate Bill 1437 or the resulting statutory amendments that the Legislature only intended to provide prospective relief for the ameliorative changes to the law such that a defendant's nonfinal attempted murder conviction would be exempt from relief on appeal.  While section 1170.95 expands the scope of relief to defendants convicted of felony murder or murder under the natural and probable consequences theory to those whose judgments are final, it in no way limits retroactive relief to defendants convicted of attempted murder under the natural and probable consequences theory whose convictions are not final.  Accordingly, because [the defendants'] judgments of conviction were not yet final when these amendatory statutes lessening punishment took effect, the amended statutes, not the old statutes in effect when the prohibited acts were committed, apply." (*Medrano*, *supra*, at pp. 1018–1019, review granted; accord, *Sanchez*, *supra*, at p. 644, review granted.)

In this case, defendant's judgment of conviction for attempted murder is not yet final.  (*People v. McKenzie* (2020) 9 Cal.5th 40, 45.)  Therefore, following *Medrano* and *Sanchez*, we conclude he is entitled, on direct appeal, to relief from his attempted murder conviction, which may have been based on a natural and probable consequences theory. (*Medrano*, *supra*, 42 Cal.App.5th at p. 1019, review granted; *Sanchez*, *supra*, 46 Cal.App.5th at p. 644, review granted.)[8]

---

[7]     In a more recent murder case, the California Supreme Court held, "[T]he ameliorative provisions of Senate Bill 1437 do not apply on direct appeal to nonfinal convictions obtained before the law became effective.  Such convictions may be challenged on Senate Bill 1437 grounds only through a petition filed in the sentencing court under section 1170.95." (*Gentile*, *supra*, 10 Cal.5th at pp. 851–852; accord, *People v. Duchine* (2021) 60 Cal.App.5th 798, 809.) As *Gentile* did not address the crime of attempted murder in the context of Senate Bill 1437 and the high court has not yet issued a decision in *Lopez*, we follow *Medrano* and *Sanchez* on this point. (Cf. *People v. Love* (2020) 55 Cal.App.5th 273, 292, review granted Dec. 16, 2020, S265445 [disagreeing with *Medrano* and concluding that "even if Senate Bill 1437 reached attempted murder convictions on a prospective basis, it does not provide for retroactive relief for such convictions whether final or not"].)

[8]     "'When a trial court instructs a jury on two theories of guilt, one of which was legally correct and one legally incorrect, reversal is required unless there is a basis in the record to find

11.

## DISPOSITION

Defendant's conviction on count 1 for attempted murder is reversed. The People may elect to retry defendant on the attempted murder count on any theory permitted under the changes made by Senate Bill 1437. If the People elect to retry the attempted murder count, they shall notify defendant of that fact within 30 days of the filing of the remittitur and proceed with the prosecution in the time permitted by law. If the People do not elect to retry the attempted murder count, defendant shall be resentenced. In all other respects, the judgment is affirmed.

---

that the verdict was based on a valid ground.'" (*Medrano*, *supra*, 42 Cal.App.5th at p. 1019, review granted, quoting *People v. Chiu*, *supra*, 59 Cal.4th at p. 167.)