Filed 9/14/23  P. v. Wilson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>    v.<br><br>LAMAR WILSON,<br><br>      Defendant and Appellant. | C096512<br><br>(Super. Ct. No. 21FE008577) |

During an argument with his girlfriend, defendant Lamar Wilson choked her twice.  A few weeks later, defendant broke into her apartment, grabbed her, and threw her.  A jury found him guilty of numerous assaultive offenses, including battery with serious bodily injury and corporal injury to a dating partner.  The trial court sentenced defendant to an aggregate term of 17 years, which included the upper term of five years, doubled due to a prior strike conviction, on the corporal injury to a dating partner; a consecutive one year, doubled due to the prior strike conviction, on battery with serious

1

bodily injury; and a consecutive five years on the prior serious felony enhancement.  On appeal, defendant claims the trial court's failure to stay the term on the battery with serious bodily injury violated Penal Code[1] section 654 and the trial court abused its discretion under section 1385 in failing to strike the prior serious felony conviction enhancement.  We disagree and will affirm the judgment.

## I.  BACKGROUND

In May 2021, defendant and the victim were in a dating relationship.  One evening, defendant arrived at the victim's home to collect his belongings, because they had been arguing earlier.  The victim's children were in her room with the door shut.  Defendant took his belongings but returned a few minutes later because he forgot his charger.  Defendant ripped the door off its hinges and choked the victim as she was standing by the door of the room where her children were.  Defendant choked the victim with both hands and used so much force that she felt like she could not breathe.  Defendant let go, and the victim fell to the ground.  While the victim was lying on the ground by the heater near the kitchen, defendant got on top of her and choked her again, using both hands and enough force that the victim felt like she could not breathe.  Defendant's friend came in, pulled defendant off of the victim, and they ran out of the apartment.  Then the victim lost consciousness.  When the victim woke up, she called the police.  The victim remembered that defendant choked her in a similar way both times but could not remember how long each choking lasted.  The People's domestic violence expert testified that strangulation is dangerous because it can decrease blood oxygen to the brain, kill brain cells, cause tears and bleeding of arteries, bruise bones, small tissue, and cartilage in the neck are,; and cause death.  Defendant and the victim later broke up, but he continued to threaten to beat her up.

---

[1] Undesignated statutory references are to the Penal Code.

2

A few weeks later, the victim was preparing to go on a date with another man when defendant again broke into the victim's apartment. Defendant then took the victim's purse and ran out of the apartment. The victim chased after defendant and grabbed her purse back from him. When the victim told defendant she was going to call the police, defendant grabbed her, and they wrestled over her phone. Defendant told the victim that he was not going to let her call the police and was not going to go back to jail. Defendant grabbed the victim and threw her hard enough for her to almost fall to the ground. Defendant tossed the victim's phone into the grass and left.

Defendant had a long history of assaultive crimes, including convictions for inflicting corporal injury on a dating partner or spouse and misdemeanor battery. According to the probation report, defendant's criminal record included convictions for: misdemeanor battery in early December 2008, late December 2008, and 2013 (§ 243, subd. (e)(1)); inflicting corporal injury on a dating partner or spouse in 2012, 2014, and 2018 (§ 273.5, subd. (a)); burglary in 2014 and 2017 (§ 459); larceny in 2009 (§ 484, subd. (a)); possession of a controlled substance in 2010 (Health & Saf. Code, § 11350, subd. (a)); and possession of a controlled substance for sale in 2018 (Health & Saf. Code, § 11351). The parties stipulated that defendant was previously convicted of corporal injury to a spouse in 2014 and 2018. Specifically, as to the 2014 domestic violence conviction, defendant slapped, pushed, and choked an ex-partner; and as to the 2018 conviction, defendant slammed a trunk door on an ex-partner's head during an argument and drove away, leaving his ex-partner bleeding and crying.

A jury found defendant guilty of battery with serious bodily injury (§ 243, subd. (d)), corporal injury to a dating partner (§ 273.5, subd. (a)), assault by means of force likely to cause great bodily injury (§ 245, subd. (a)(4)), and misdemeanor battery on a dating partner (§ 243, subd. (e)(1)). After defendant waived jury trial, in bifurcated proceedings, the trial court found the prior conviction allegations and aggravating factors true. Specifically, the trial court found that threatened great bodily harm and other acts

3

disclosed a high degree of cruelty, viciousness, or callousness (Cal. Rules of Court, rule 4.421(a)(1));[2] defendant engaged in conduct that indicated a serious danger to society (rule 4.421(b)(1)); defendant's prior convictions were numerous and increasing in seriousness (rule 4.421(b)(2)); defendant had served prior prison or county jail (rule 4.421(b)(3)); defendant was on probation, mandatory supervision, postrelease community supervision, or parole when the crime was committed (rule 4.421(b)(4)); and defendant's prior performance on probation, mandatory supervision, postrelease community supervision, or parole was unsatisfactory (rule 4.421(b)(5)).

At sentencing, the trial court indicated it had read and considered the probation report. Although the probation report concluded that battery with serious bodily injury was an alternative to corporal injury to a dating partner, the trial court disagreed with the probation report's recommendation to stay sentencing on the battery with serious bodily injury conviction pursuant to section 654. Instead, the trial court found that "there were two incidents, the coming back and choking again." The trial court further stated, "It could have ended with a first. It didn't. A second was instituted." Accordingly, the trial court sentenced defendant to the upper term of five years, doubled to 10 years for the prior conviction, on corporal injury to a dating partner; one year, one-third the midterm, doubled to two years, to run consecutive on battery with serious bodily injury; the upper term of four years, doubled to eight years, and stayed pursuant to section 654 on assault by means of force likely to cause great bodily injury; and one year to run concurrent on misdemeanor battery on a dating partner. Additionally, the trial court imposed the five-year prior serious felony conviction enhancement.

---

[2] Undesignated rule references are to the California Rules of Court.

## II.  DISCUSSION

A.    *Section 654*

Defendant contends that the trial court prejudicially erred by imposing consecutive sentences on the battery with serious bodily injury and corporal injury to a dating partner counts in violation of section 654.  Specifically, defendant argues that because he did not have an opportunity to reflect between the two chokings, the two chokings were part of a continuous, indivisible course of conduct.  We disagree.

Section 654 provides, in part:  "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision."  (§ 654, subd. (a).)  The law gives the trial court "broad latitude" in determining whether section 654 prevents multiple punishment.  (*People v. DeVaughn* (2014) 227 Cal.App.4th 1092, 1113.)  We review the trial court's findings for substantial evidence " 'in a light most favorable to the judgment,' " meaning we " 'presume in support of the court's conclusion the existence of every fact the trier of fact could reasonably deduce from the evidence.' " (*People v. Andra* (2007) 156 Cal.App.4th 638, 640-641.)

Section 654's reference to an "act or omission" may include both a discreet physical act and a course of conduct encompassing several acts pursued with the same objective.  (*People v. Corpening* (2016) 2 Cal.5th 307, 311.)  Courts thus apply a two-step inquiry to determine whether section 654 bars multiple punishments.  First, if the defendant completed the crimes by a " 'single physical act,' " he may not be punished more than once for that act.  (*Corpening, supra,* at p. 311.)  Second, if the case involves more than a single act—i.e., a course of conduct—courts "consider whether that course of conduct reflects a single 'intent and objective' or multiple intents and objectives."  (*Ibid.*)  Defendant does not dispute the trial court's finding that there was more than one physical act.  Instead, defendant argues that the two choking incidents were one continuous course

5

of conduct with no time for reflection. Accordingly, we proceed to step two of the analysis.

The actor's intent and objective determines " '[w]hether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654.' " (*People v. Correa* (2012) 54 Cal.4th 331, 336.) If the actor maintained only one objective across multiple offenses, he may only be punished for one of those offenses. (*Ibid.*) However, "a course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment." (*People v. Beamon* (1973) 8 Cal.3d 625, 639, fn. 11.) Thus, in determining whether criminal offenses are temporally divisible, courts consider whether the defendant had an "opportunity to reflect and to renew his or her intent before committing the next [offense], thereby aggravating the violation of public security or policy already undertaken." (*People v. Gaio* (2000) 81 Cal.App.4th 919, 935.)

Here, even though defendant may have had the same intent during both choking incidents, substantial evidence supports the trial court's finding that defendant had the opportunity to reflect and renew his intent between the first and second choking, making them a divisible course of conduct.[3] Defendant could have stopped the assault after the first choking. Instead, he moved to a different area in the apartment, got on top of the victim, and renewed his assault by choking her again. Each choking was a separate act of force involving separate incidents of defendant placing both his hands around the

---

[3] While defendant argues that the People misstated the evidence by arguing a third party intervened between the first and second choking, the record does not show that the trial court considered this misstatement in determining the first and second choking were separate acts. We note that defendant also misstated the record at sentencing by saying that the second choking occurred seconds after he returned to the house. Again, the record does not show that the trial court considered this misstatement in determining the first and second choking were separate acts. We thus need not weigh these claims in our assessment of the trial court's findings.

victim's neck and squeezing with enough force that the victim felt like she could not breathe; each choking was volitional and calculated—not spontaneous or uncontrollable. In addition, the second choking created a new risk of harm to the victim; thereby increasing defendant's culpability. Viewed in the light most favorable to the judgment, defendant had the opportunity to reflect and renew his intent to inflict violence on the victim and created new risk to the victim. Thus, substantial evidence supports that the two choking incidents are part of a divisible course of conduct allowing for multiple punishments.

**B.      Section 1385**

Defendant contends that the trial court prejudicially abused its discretion by failing to strike the prior serious felony conviction enhancement. Specifically, defendant argues that the trial court failed to recognize and give "great weight" to the mitigating circumstances that his prior serious felony conviction was over five years old (§ 1385, subd. (c)(2)(H)) and his prior felony convictions are not violent felonies (§ 1385, subd. (c)(2)(F)). We disagree.

*1.      Additional Legal Background*

Effective January 1, 2022, Senate Bill No. 81 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 721, § 1) amended section 1385 "to specify factors that the trial court must consider when deciding whether to strike enhancements from a defendant's sentence in the interest of justice." (*People v. Sek* (2022) 74 Cal.App.5th 657, 674.)[4]  As amended, section 1385, subdivision (c) now provides in relevant part:  "(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute.  [¶]  (2) In exercising

---

[4] We note that a subsequent enactment, Assembly Bill No. 200 (2021-2022 Reg. Sess.) (Stats. 2022, ch. 58, § 15), which took effect on June 30, 2022, made technical, nonsubstantive changes to section 1385 that do not affect the issues on appeal.

its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, *unless the court finds that dismissal of the enhancement would endanger public safety.* 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (Italics added.) Among the enumerated circumstances in section 1385, subdivision (c) are: (1) the current offense is not a violent felony (§ 1385, subd. (c)(2)(F)); and (2) the prior conviction underlying the enhancement is over five years old (§ 1385, subd. (c)(2)(H)).

### 2. *Additional Factual Background*

During the sentencing hearing, the trial court gave both parties an opportunity to be heard on the issues of aggravating circumstances. Defendant asked the court to strike the prior serious felony enhancement because the conviction was over five years old. Defendant also added that doubling the terms and imposing the upper term based on the prior 2014 conviction would mean multiple enhancements are alleged. Defendant asked the court to consider this in the sentencing under Senate Bill No. 81 and to strike the serious felony five-year prior conviction enhancement "in the spirit of the new legislation."

The trial court explicitly recognized its discretion to strike or reduce the serious felony five-year prior conviction enhancement but chose not to do so. Based on defendant's criminal history, especially his previous domestic violence convictions, which involved "significant abuse of another human being" he was in a personal relationship with, the trial court concluded that it would not be in the interests of justice to exercise its discretion. The trial court noted several of defendant's previous convictions from 2008 through 2018, including convictions for inflicting corporal injury to a spouse or dating partner, misdemeanor inflicting corporal injury to a spouse or dating

8

partner (§ 273.5), and battery (§ 243). In discussing these prior assaultive convictions, the trial court stated that "[defendant] simply cannot behave like this repeatedly, over, and over . . . ." The trial court weighed defendant's "constitutional right to have a fair sentence to meet the crime" with "society's interest in having levels of punishment that reflect the crimes . . . and also to protect the citizens from further harm or crimes." The trial court also explicitly stated that it did not find any of the factors now listed under section 1385 warranted striking the enhancement. The trial court concluded that it would exercise its discretion to not strike the five-year prior serious felony conviction enhancement.

### 3. Forfeiture

Defendant argues that the trial court abused its discretion by not giving the mitigating factor that the current offense is not a violent felony the requisite weight. Defendant did not argue this mitigating factor applied to his case or present evidence of this mitigating factor at the sentencing hearing, despite the trial court giving him multiple opportunities to do so. Failure to raise the claim in the trial court forfeits the issue on appeal. (*People v. Carmony* (2004) 33 Cal.4th 367, 375-376; *People v. Scott* (1994) 9 Cal.4th 331, 351-354.) We thus conclude defendant has forfeited this claim.

To the extent defendant also argues that racial disparity is a mitigating factor that the trial court failed to give "great weight," we also conclude this claim is forfeited on appeal, because defendant did not argue this or present evidence of it at sentencing.

### 4. Abuse of Discretion

We review a trial court's order denying a motion to dismiss a sentence enhancement under section 1385 for abuse of discretion. (*People v. Carmony, supra*, 33 Cal.4th at pp. 373-374.) Abuse of discretion in failing to strike a prior conviction may occur where the trial court is not aware of its discretion, considers impermissible factors, fails to consider relevant factors; or where the decision is so irrational or arbitrary, no reasonable person could agree with it. (*Id.* at pp. 377, 378.) "The court is presumed to

9

have considered all of the relevant factors in the absence of an affirmative record to the contrary." (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.)

Under section 1385, subdivision (c)(2), if a court "finds that dismissal of an enhancement 'would endanger public safety,' then the court need not consider the listed mitigating circumstances." (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 296.) In explaining its sentencing decision, the trial court noted defendant's repeated incidents of violence against, and significant abuse of, others and the need to "protect the citizens from further harm or crimes." We interpret the trial court's statements as an implied finding that dismissal of the enhancement would endanger public safety. This finding was not an abuse of discretion. It is apparent that the trial court was concerned defendant would continue to commit acts of violence, particularly domestic violence. The record reflects that defendant sustained multiple domestic violence and battery convictions since 2008, including shutting a trunk door on his ex-partner's head and choking an ex-partner. In this case, defendant choked the victim twice, continued to threaten her with physical harm, and then just a few weeks later, returned and threw her hard enough for her to almost fall to the ground. Among the aggravating factors found true, were that: (1) there was threatened great bodily harm and other acts disclosed a high degree of cruelty, viciousness, or callousness (rule 4.421(a)(1)); and (2) defendant engaged in conduct that indicated a serious danger to society (rule 4.421(b)(1)). Based on defendant's significant history of repeated domestic violence abuse, we cannot conclude that the trial court's finding that a dismissal of the enhancement would endanger public safety is so irrational or arbitrary that no reasonable person could agree with it. Moreover, the record reflects the trial court understood its discretion and considered the appropriate factors. Accordingly, we conclude that the trial court did not abuse its discretion in not striking the enhancement.

### III.  DISPOSITION

We affirm the judgment.

/S/

RENNER, Acting P. J.

We concur:

/S/

BOULWARE EURIE, J.

/S/

HORST, J.*

---

* Judge of the Placer County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11