Filed 10/2/24  P. v. Hancock CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JEFFREY HANCOCK,<br><br>Defendant and Appellant. | C099258<br><br>(Super. Ct. No. 21FE008207) |

A jury found defendant Jeffrey Hancock guilty of contacting or communicating with a minor with the intent to commit specified sex offenses (luring) and possession of child pornography.  The trial court sentenced him to two years eight months in state prison.

On appeal, Hancock argues that one of the jury's two true findings related to the luring conviction was unauthorized and should be stricken.  He also asserts that the trial court should have stayed the prison term on either the luring or child pornography

1

conviction under Penal Code section 654.[1]  He further contends that the court imposed an unauthorized eight-month term for the luring offense.  We agree with the first and third contentions but reject the second.

## BACKGROUND

Hancock was charged with multiple sex offenses against J.D. and H.D., including four counts of committing a lewd and lascivious act on J.D., a 14-year-old child at least 10 years younger than him (§ 288, subd. (c)(1); counts one through four); contacting or communicating with a minor, J.D., with the intent to commit a number of target sex offenses, including a violation of section 288.3, subdivision (a) (§ 288.3, subd. (a); count five); possession of child pornography (§ 311.11, subd. (a); count six); annoying or molesting H.D., a child under the age of 18 (§ 647.6, subd. (a); count seven); and committing a lewd and lascivious act on H.D., a 14-year-old child at least 10 years younger than him (§ 288, subd. (c)(1); count eight).  Counts one through six were alleged to have occurred on or about and between October 1, 2020, and April 7, 2021.

According to evidence adduced at trial, J.D.'s mother would not allow J.D. to download Snapchat, a social media messaging application, on her cell phone.  Hancock had his own Snapchat account and would let J.D. use it to send text messages and nude pictures of herself to her boyfriend.  Hancock offered to let J.D. store naked pictures of herself in a hidden, "my eyes only," passcode-protected Snapchat file on his phone, assuring her that she could trust him not to look at them.  The two shared the passcode to the file, and Hancock would sometimes hide photos of J.D. if she forgot to do so.  She could tell that he sometimes moved things around in the "my eyes only" file after she had placed them there.

---

[1]  Undesignated statutory references are to the Penal Code.

According to J.D., she sent nude photos of herself to her boyfriend using Hancock's phone around early August or late September 2020, and some of those photos were stored in the "my eyes only" file. She also stored explicit videos there after sending them to her boyfriend. Sometimes Hancock would comment on the photos J.D. had stored there.

On October 24, 2020, when J.D. was around 14 years old, she secretly signed up for Snapchat. J.D. told Hancock about her account. J.D. would still sometimes use Hancock's phone to send messages to her boyfriend because she was anxious that her mother would find the application on her phone.

During this time, J.D. used her own Snapchat account to send Hancock sexually explicit photos or videos, which she had originally made for her then-boyfriend. Later, Hancock requested various poses or sexually explicit videos of her, and she eventually sent them to him directly. J.D. took and saved approximately 20 to 30 sexually explicit photos and videos, some of which she sent to Hancock.

Throughout this time period, Hancock would also message J.D. through Snapchat or verbally ask her to let him touch her breasts or vagina. Several times, Hancock mentioned wanting J.D. to orally copulate him or touch his penis. He would tell her not to save his messages.

On multiple occasions, Hancock touched J.D.'s breasts and inner thigh. On one occasion, he massaged her breasts.

On April 6, 2021, J.D.'s mother learned about J.D.'s secret Snapchat account after confiscating her phone. J.D.'s mother kicked Hancock out of their home after learning that Hancock had known about the secret account and had messaged J.D. on it; J.D. then told her mother about the sexually explicit photos and communications with him. J.D.'s mother called the police on April 7, 2021, and officers responded to their home; Hancock was not present at the time. Police collected J.D.'s phone as evidence.

An investigating detective obtained a search warrant for Hancock's phone and arranged to meet him. Hancock consented to a search of his phone and provided the detective with the phone's passcode. The detective opened the phone and found Hancock's Snapchat application; when the detective checked the application, however, the messages had been deleted.

An initial forensic analysis of Hancock's phone did not uncover any concerning photographs of J.D. The investigating detective later located an "expunged file" in one of Hancock's cloud storage accounts that contained several sexual photos and videos. Because the pictures were not located on the phone during the initial search, but were stored in the cloud, the detective concluded that the pictures had been on the phone at one time but had been deleted from the phone after being backed up in the cloud.

The detective later conducted a second, more thorough forensic analysis of Hancock's phone and located additional sexual photographs and several videos of J.D. within the "my eyes only" file on Hancock's Snapchat account. Based on the time stamp on the videos and photographs, the detective testified that they first "showed up" on Hancock's phone on April 6, 2021 (distinguished from the date the photos or videos were actually created) and that they came from the "my eyes only" account from Snapchat.

Hancock testified on his own behalf at trial. He stated that J.D. confided certain things in Hancock that she did not want to discuss with her mother. He denied asking J.D. to send him naked pictures and testified that she had never sent him such photos. He denied ever touching J.D.'s breasts or upper thigh near her vagina or asking her to orally copulate him, to put her hand on his penis, or to allow him to touch her vagina. He denied deleting photos once he knew J.D.'s mother was aware of J.D.'s Snapchat account. He also denied accessing his cloud account.

In rebuttal, the investigating detective testified that the sexually explicit photos and videos showed up on Hancock's phone after J.D.'s mother had confiscated J.D.'s phone and discovered her Snapchat account. The detective also testified that there was

4

evidence that Hancock had accessed his phone to view an email he received from a government agency around the same time the photos and videos of J.D. first appeared on his phone from the "my eyes only" file on April 6, 2021.

The jury found Hancock guilty of count five (luring) and count six (possession of child pornography) with respect to J.D. but not guilty of all remaining counts. In a bifurcated proceeding, the trial court found several aggravating factors true beyond a reasonable doubt, including that Hancock induced a minor to commit or assist in the commission of the possession of pornography offense, that the victim was particularly vulnerable, that the offenses were carried out with planning and sophistication, that Hancock occupied a position of trust or confidence, and that he inflicted emotional injury on the victim. (Cal. Rules of Court, rules 4.421(a)(3), (a)(5), (a)(8), (a)(11) & 4.408(a).) The court sentenced Hancock to an aggregate term of two years eight months in state prison, including the midterm of two years on count six and a consecutive eight months on count five.

Hancock timely appealed.

DISCUSSION

I.

Hancock first asserts that one of the jury's true findings on the luring count—that he violated section 288.3 by intending to violate section 288.3—is unauthorized and must be stricken. The People agree, as do we.

As noted above, Hancock was charged in count five with contacting a minor with the intent to commit a number of target sex offenses, including a violation of section 288.3, subdivision (a). The trial court instructed the jury with CALCRIM No. 1124, that to find Hancock guilty of count five, the jury had to find that when he contacted a person whom he knew or reasonably should have known was a minor, he intended to commit one or more of the following crimes involving that minor: contacting a minor to commit a specified sex offense (§ 288.3, subd. (a)); possessing matter

5

depicting a minor engaged in or simulating sexual conduct (§ 311.11, subd. (a)); oral copulation by force, fear, or threats (§ 287, subd. (c)(2)); sexual penetration by force, fear, or threats (§ 289, subd. (a)(1)); or lewd or lascivious conduct on a 14- or 15-year-old who was at least 10 years younger than him (§ 288, subd. (c)(1)). In finding Hancock guilty of count five, the jury specifically found true that when he contacted J.D., a minor, he intended to commit the first two sex offenses: contacting a minor to commit a specified sex offense under section 288.3, subdivision (a) and possessing matter depicting a minor engaged in or simulating sexual conduct under section 311.11, subdivision (a). As reflected on the jury's verdict form and in the reporter's transcript, the jury found not true that Hancock intended to commit the other alleged target offenses.

The parties agree that the jury's true finding that Hancock violated section 288.3 by intending to violate section 288.3 is not authorized by the plain language of the statute. (See *People v. Johnson* (2002) 28 Cal.4th 240, 244 [if a statute's plain language is clear, reviewing courts apply that meaning].) Section 288.3, subdivision (a) provides in relevant part: "Every person who contacts or communicates with a minor, or attempts to contact or communicate with a minor, who knows or reasonably should know that the person is a minor, with intent to commit an offense specified in Section 207, 209, 261, 264.1, 273a, 286, 287, 288, 288.2, 289, 311.1, 311.2, 311.4 or 311.11, or former Section 288a, involving the minor shall be punished by imprisonment in the state prison for the term prescribed for an attempt to commit the intended offense." Because section 288.3 is not among the offenses specifically listed in section 288.3, subdivision (a), it cannot serve as a basis for a conviction under the statute. The jury's true finding regarding the intent to violate section 288.3 therefore must be stricken.

We note as well a discrepancy between the jury's verdict on count five and the trial court minutes recording the verdict. As noted above, the verdict form and reporter's transcript show that the jury found not true the allegations that Hancock intended to commit oral copulation by force (§ 287, subd. (c)(2)), sexual penetration by force (§ 289,

6

subd. (a)(1)), or lewd and lascivious conduct (§ 288, subd. (c)(1)), while finding true the allegations that he intended to contact a minor to commit a specified sex offense (§ 288.3, subd. (a)) and intended to possess matter depicting a minor engaged in or simulating sexual conduct (§ 311.11, subd. (a)). The minute order, however, states that the jury found the oral copulation, sexual penetration, and lewd and lascivious act allegations *true* while it found the contacting a minor and the possession of matter depicting a minor engaged in sexual conduct *not true*. Accordingly, in addition to ordering the trial court to strike the jury's true finding regarding the intent to violate section 288.3, we direct the trial court clerk to correct the minutes to accurately reflect the jury's verdict on count five. We otherwise affirm the conviction.

## II.

Hancock next contends that, under section 654, the trial court was required to stay his sentence on one of his two convictions. As previously noted, the trial court sentenced Hancock to two years on count six (possession of child pornography) and a consecutive eight months on count five (luring). The court declined to apply section 654, concluding that Hancock's crimes "involve[d] a divisible course of conduct based upon the intent and the objective of the defendant." It reasoned: "In Count Five, the defendant was acting with specific intent. And in Count Six, he acted with general intent. The fact that one of two target crimes in Count Five is the same as the crime in Count Six does not change the analysis. The acts comprising the convictions in Counts Five and Six may share commonalities, but they are mutually exclusive of each other. They are not predominantly independent [*sic*], and they are not the conduct of a single intent."

Section 654, subdivision (a) provides that "[a]n act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." The statute prohibits multiple punishments when a defendant is convicted of more than one crime based on a single act or omission. (*People v. Coleman* (1989)

7

48 Cal.3d 112, 162.) It also bars multiple punishments for convictions arising out of a course of conduct that is committed with a single objective. (*People v. Corpening* (2016) 2 Cal.5th 307, 311-312.)

The statute, however, does not preclude multiple punishments when a course of conduct is "divisible in time," even if directed to one objective. (*People v. Beamon* (1973) 8 Cal.3d 625, 639, fn. 11.) "If the offenses were committed on different occasions, they may be punished separately." (*People v. Kwok* (1998) 63 Cal.App.4th 1236, 1253.) "This is particularly so where the offenses are temporally separated in such a way as to afford the defendant opportunity to reflect and to renew his or her intent before committing the next one, thereby aggravating the violation of public security or policy already undertaken." (*People v. Gaio* (2000) 81 Cal.App.4th 919, 935.)

" 'A trial court's express or implied determination that two crimes were separate, involving separate objectives, must be upheld on appeal if supported by substantial evidence.' " (*In re Raymundo M.* (2020) 52 Cal.App.5th 78, 94.) "We review the trial court's determination in the light most favorable to the respondent and presume the existence of every fact the trial court could reasonably deduce from the evidence." (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1143.)

Here, as the People argue, although Hancock communicated with J.D. to obtain sexually explicit photos and videos of her, the communication in count five and the possession of child pornography in count six were divisible in time. Beginning in October 2020, Hancock began communicating with J.D. via her secret Snapchat account. On multiple occasions, he requested and encouraged her to send him sexually explicit photos and videos, which were stored in his "my eyes only" passcode-protected file. J.D. testified that she could tell that Hancock had moved things around in the file after the photos or videos had been placed there and that Hancock would sometimes comment on how she looked in the photos. These communications between Hancock and J.D. lasted until April 2021—over a seven-month period—when J.D.'s mother discovered her secret

8

Snapchat account and confiscated her phone. Evidence shows that many of the images and videos of J.D. appeared on Hancock's phone on April 6, 2021, after J.D.'s mother had taken her phone away. There was also evidence that Hancock's phone was used to check a personal email at the same time as the photos and videos were pulled from the "my eyes only" file to the phone. A reasonable inference from such evidence is that once Hancock knew J.D.'s mother had discovered her Snapchat account, he began downloading the sexually explicit images and videos stored on the cloud for Snapchat to his phone so that he could delete them to avoid detection.

Substantial evidence thus supports the conclusion that Hancock engaged in a divisible course of conduct that could be punished separately. The acts were committed on different occasions and were temporally separated as to allow him to reflect and renew his intent. Punishing Hancock for both his months-long campaign directing J.D. to send pornographic images of herself and possessing and reviewing such images on different occasions punishes Hancock in a way that is commensurate with his culpability.

Hancock relies on *People v. Medelez* (2016) 2 Cal.App.5th 659 to contend that he harbored a single intent for both crimes and that the luring in count five was merely incidental to, and directly facilitated, the possession of child pornography in count six. In *Medelez*, the defendant drove a minor to a remote place and offered him money in exchange for oral sex. (*Id.* at p. 662.) When the minor refused, the defendant told him to take off his pants. (*Ibid.*) The minor complied because he was afraid. (*Ibid.*) The defendant showed the minor pornographic pictures and " 'was about to lean in' " when the minor pulled up his pants and stopped the defendant. (*Ibid.*) The jury found the defendant guilty of luring with the intent to engage in oral sex and attempted oral copulation with a minor. (§§ 288.3, subd. (a), 664, former § 288a, subd. (b)(1); *Medelez*, at p. 661.) The trial court imposed separate sentences for the crimes. (*Medelez*, at p. 661.) The Court of Appeal reversed, ruling that the defendant could not be punished

9

for both attempted oral copulation and luring "because the crimes were based on a single intent and objective, as the People concede." (*Id.* at p. 663.)

In *Medelez*, the crimes immediately followed one after the other in time. The luring was incidental to the attempted oral copulation, and the crimes were not temporally separated in such a way as to afford the defendant the opportunity to reflect and to change or renew his intent. Here, by contrast, there was sufficient evidence that the acts were not dependent on one another and that Hancock had a sufficient opportunity to reflect and renew his intent to communicate with J.D. over many months to coax her to send explicit pictures and videos and to possess those images. Unlike in *Medelez*, the crimes here did not occur virtually simultaneously. They occurred over a seven-month period between October 2020 and April 2021. Thus, both of Hancock's convictions, divisible in time, were properly punished.

### III.

Last, Hancock contends that the trial court erred in imposing a consecutive term of eight months on count five (§ 288.3). The People concede the error.

The punishment for a violation of section 288.3 is "state prison for the term prescribed for an attempt to commit the intended offense." (§ 288.3, subd. (a).) Ordinarily, the punishment for an attempt is "one-half the term of imprisonment prescribed upon a conviction of the offense attempted." (§ 664, subd. (a).)

Here, the "intended offense" (§ 288.3, subd. (a)) was possession of child pornography in violation of section 311.11. Section 311.11, subdivision (a) provides that every person who violates the statute is guilty of a felony and shall be punished by imprisonment in the state prison, or a county jail for up to one year, or by a fine or both the fine and imprisonment. It has a sentencing triad of 16 months, two years, or three years. (§ 18, subd. (a).) Therefore, communicating with a minor with intent to possess child pornography in violation of section 288.3 has a sentencing triad of eight months,

one year, or one year six months.  A consecutive subordinate term imposed pursuant to section 1170.1, in turn, is four months (one-third the middle term).

Here, the trial court orally imposed a consecutive eight-month term on count five, reasoning that eight months was one-third the middle term of 24 months.  After the sentencing hearing, the trial court stated in an e-mail exchange with counsel that the sentence on count five was four months because the punishment for violating section 288.3 is half the target offense.  The sentencing minute order and abstract of judgment reflect a four-month term on count five.

When there is a discrepancy between the written minute order or abstract of judgment and the trial court's oral pronouncement of judgment, the oral pronouncement controls.  (*People v. Mitchell* (2001) 26 Cal.4th 181, 185-186; *People v. Zackery* (2007) 147 Cal.App.4th 380, 385.)  This means that the trial court's oral pronouncement of an eight-month term on count five during the sentencing hearing, rather than its subsequent e-mail referencing a four-month term on that count, controls over the minute order and abstract of judgment.

A court with jurisdiction over the judgment may correct an unauthorized sentence at any time even if the defendant did not object on that basis below.  (*In re G.C.* (2020) 8 Cal.5th 1119, 1129-1130.)  Accordingly, we modify the judgment to reflect the imposition of a consecutive four-month prison term on count five.  Because the abstract of judgment and sentencing minute order already indicate a four-month term, no correction to these documents is necessary with respect to the term on count five.

# DISPOSITION

The judgment is modified to strike the jury's true finding on count five that Hancock violated section 288.3 by intending to violate section 288.3.  It is also modified to reflect the imposition of a consecutive four-month subordinate term on count five.  As so modified, the judgment is affirmed.  The trial court clerk is also directed to correct the minutes to accurately reflect the jury's verdict on count five, consistent with the above opinion.

/s/
FEINBERG, J.

We concur:

/s/
MAURO, Acting P. J.

/s/
RENNER, J.