Filed 5/5/26  P. v. Vosburgh CA3

<u>NOT TO BE PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

| | |
|---|---|
| THE PEOPLE,<br>        Plaintiff and Respondent,<br><br>        v.<br><br>BRIAN ALLEN VOSBURGH,<br>        Defendant and Appellant. | C103253<br><br>(Super. Ct. No. 24F5376) |

Defendant Brian Allen Vosburgh broke into the residence of his ex-girlfriend, D.W., and attacked, threatened, and falsely imprisoned her, Karen S., and Kimberly Z.  A jury found defendant guilty of numerous crimes against the three women, including assault with a deadly weapon (Pen. Code,[1] § 245, subd. (a)(1); count 3) and corporal injury to a spouse or cohabitant (§ 273.5, subd. (a); count 4) against D.W.  The trial court sentenced defendant to 10 years 4 months in state prison, including one year consecutive (one-third the middle term) for both assault with a deadly weapon (§ 245, subd. (a)(1)) and corporal injury to a spouse or cohabitant (§ 273.5, subd. (a)).  On appeal, defendant claims the trial court's failure to stay the term for either the assault with a deadly weapon conviction or the corporal injury to a cohabitant conviction violated section 654.  We disagree and affirm the judgment.

---

[1]        Undesignated statutory references are to the Penal Code.

1

## BACKGROUND[2]

Prior to September 2024, defendant and D.W. ended their previous dating relationship. D.W. lived in a studio on the same property as Kimberly Z.

In the early morning of September 11, 2024, defendant used a crowbar to break into D.W.'s studio where she and Karen S. were sleeping. Defendant yelled at D.W. about Karen S. being there and attacked Karen S. by punching her all over her body and face and putting his hands over her mouth, giving her a bloody nose and black eye. D.W. repeatedly intervened but could not stop the attack and ran to get help. At some point, defendant grabbed Karen S. from behind with both arms and choked her into unconsciousness.

D.W. ran to Kimberly Z.'s trailer and told her about the assault. Kimberly Z. ran to D.W.'s room and saw defendant attacking Karen S., who was unconscious. When Karen S. regained consciousness, D.W. and Kimberly Z. were on top of her trying to shield her from defendant's continued punches. The pair kept defendant off Karen S. long enough for Kimberly Z. and Karen S. to leave the studio. Kimberly Z. then drove Karen S. off the property, and Karen S. called 911. Meanwhile, D.W. and defendant argued and fought. Defendant threatened to kill D.W. so police officers would kill defendant. D.W. was screaming at defendant to stop and he covered her mouth with his hands and told her to shut up.

Kimberly Z. returned to the studio and saw defendant straddling and "[d]ominating" D.W. Defendant, who was angry, paced in front of D.W. Kimberly Z. tried to get between them and diffuse the situation. At some point, defendant grabbed a bat and used it to intimidate them, but Kimberly Z. wrestled the bat away from him.

---

**2** The parties stipulated to Shasta County Sheriff's Department report No. SCSO24-003815, which is summarized in the probation report, and the preliminary hearing transcript as the factual basis for the plea.

Throughout this time, defendant prevented the women's escape by standing in their way and threatening them, including threatening to bait police officers into shooting him by stabbing D.W. if she left. Eventually, Kimberly Z. got between defendant and D.W., and defendant shoved them both to the ground where Kimberly Z. landed on top of D.W. Defendant cut D.W.'s wrist with a knife, which left a scar. In his other hand, defendant held a screwdriver and swung it, but Kimberly Z. put her hand up to block it.[3]

Shasta County Sheriff's Office K-9 Deputy Gerry Maul responded to the scene where Karen S. explained that defendant had assaulted her. Deputy Maul heard yelling and fighting and the sounds of someone being restrained inside the studio. He heard a male voice saying, "I am going to kill you. Don't leave." Deputy Maul moved towards the studio and saw defendant restraining D.W. with his right arm wrapped around her and his left hand grabbing her left arm. Defendant threatened to stab and kill D.W. and prevented Kimberly Z. from leaving.

When defendant saw Deputy Maul, defendant asked if Deputy Maul was going to shoot him or if defendant was going to kill the women. Deputy Maul ordered defendant to get on the ground, but he refused and continued physically attacking and threatening the women. Deputy Maul drew his weapon and ordered defendant to get away from the women, put his hands up, and get on the ground. Defendant moved away from the women and towards Deputy Maul while threatening to kill him and telling Deputy Maul to shoot him. Deputy Maul told the women to leave, but as they tried, defendant lunged towards them, put his arms around D.W., and "violently" pushed her into the wall. The women managed to get away, and defendant stepped towards Deputy Maul yelling,

---

[3] Kimberly Z. testified that a sheriff's deputy had made himself known at this time. D.W. testified that the deputy had arrived, but did not make himself known until after defendant had cut her with the knife and swung with the screwdriver. D.W. also testified that she did not remember if defendant had cut her with the knife before or after the deputy announced his presence.

screaming, and challenging Deputy Maul to come at him. Concerned defendant might charge him, Deputy Maul holstered his weapon and grabbed his service flashlight to keep defendant at a distance. Deputy Maul hit defendant on the forehead with the service flashlight, ordered him to the ground, and arrested him. Deputies located a hammer and the crowbar or tire iron defendant used to break into the studio. Deputy Maul later learned defendant had been threatening the women with the hammer.

Defendant pled no contest to assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4); count 1), three counts of criminal threats (§ 422, subd. (a); counts 2, 5, and 7), assault with a deadly weapon (§ 245, subd. (a)(1); count 3), corporal injury to a spouse or cohabitant (§ 273.5, subd. (a); count 4), two counts of false imprisonment by violence (§ 236; counts 6 and 8), and resisting a peace officer (§ 69; count 9). He admitted various enhancements.

At sentencing, the trial court indicated that the assault with a deadly weapon charged under count 3 referred to the use of the hammer or possibly the screwdriver.[4] As to the corporal injury to a cohabitant charged under count 4, the trial court stated defendant's act of shoving D.W. as she tried to flee constituted a separate act from that with the hammer. Defense counsel urged the trial court to follow probation's recommendation of imposing and staying (§ 654) the aggravated term of four years on count 4 and impose a total sentence of nine years four months. The trial court declined this request and sentenced defendant to a total of 10 years 4 months in state prison, including one year consecutive (one-third the middle term) for both the assault with a

---

[4] It appears from the charging document, and the parties agree that the basis for the assault with a deadly weapon charge under count 3 was defendant's use of the knife to cut D.W. or possibly his wielding the screwdriver and not any actions involving a hammer, contrary to the trial court's statement at sentencing. Defendant does not argue this mistake as a basis to reverse the trial court's section 654 findings.

deadly weapon (§ 245, subd. (a)(1)) and corporal injury to a spouse or cohabitant (§ 273.5, subd. (a)).

Defendant filed a timely notice of appeal.

## DISCUSSION

Defendant contends the trial court erred by imposing multiple punishments for his assault with a deadly weapon and corporal injury to a cohabitant convictions because he committed them with a single intent and objective, i.e., to terrorize his former girlfriend, and these acts were not separate in time. The Attorney General asserts that defendant committed each offense with different intents and that the offenses were separated by time based on the deputy's intervention, which provided defendant an opportunity to reflect and renew his intent. We will affirm.

Section 654 provides in relevant part that "[a]n act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).)

The reference in section 654 to an "act or omission" embraces both a discrete physical act and a course of conduct encompassing several acts pursued with the same objective. (*People v. Corpening* (2016) 2 Cal.5th 307, 311.) We apply a two-step inquiry to determine if section 654 bars multiple punishments. (*Ibid.*) In step one, if the defendant completed the crimes by a " 'single physical act,' " he cannot be punished more than once for the act. (*Ibid.*) In step two, where the case involves more than a single act—in other words, a course of conduct—we "consider whether that course of conduct reflects a single 'intent and objective' or multiple intents and objectives." (*Ibid.*) Here, the parties agree that more than one physical act comprised the assault with a deadly weapon and the corporal injury to a cohabitant convictions. Defendant asserts that these offenses constituted an uninterrupted course of conduct with no time for him to pause and reflect. Thus, we proceed to analyze step two.

5

In step two, the defendant's intent and objective determines " '[w]hether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654….' " (*People v. Correa* (2012) 54 Cal.4th 331, 336.) If the defendant maintains a single objective over multiple offenses, he can be punished for only one of those offenses. (*Ibid.*) However, "a course of conduct divisible in time, although directed to one objective, may give rise to multiple violations and punishment." (*People v. Beamon* (1973) 8 Cal.3d 625, 639, fn. 11; see also *People v. Louie* (2012) 203 Cal.App.4th 388, 399.) The proximity in time between the offenses is not necessarily determinative of whether multiple punishments are prohibited. (*People v. Jackson* (2016) 1 Cal.5th 269, 354; *People v. Trotter* (1992) 7 Cal.App.4th 363, 366-368 [two assaults on the same victim one minute apart may be punished separately].) Accordingly, to determine whether criminal offenses may be temporally divisible, courts consider whether the defendant had "opportunity to reflect and to renew his or her intent before committing the next [offense]…." (*People v. Gaio* (2000) 81 Cal.App.4th 919, 935; see also *People v. Lopez* (2011) 198 Cal.App.4th 698, 717 [" 'multiple crimes are not one transaction where the defendant had a chance to reflect between offenses and each offense created a new risk of harm' "]; *People v. Kelly* (2016) 245 Cal.App.4th 1119, 1136 ["[I]f a series of acts are committed within a period of time during which reflection was possible [citation], section 654 does not apply"].)

Whether the defendant engaged in separate crimes involving separate objectives, or an indivisible course of conduct pursuant to a single objective, is a question of fact for the trial court. (*People v. Brents* (2012) 53 Cal.4th 599, 618.) The trial court's findings of separate intents are reviewed " 'in a light most favorable to the judgment,' " meaning we " 'presume in support of the court's conclusion the existence of every fact the trier of fact could reasonably deduce from the evidence.' " (*People v. Andra* (2007) 156 Cal.App.4th 638, 640-641.) We uphold the trial court's findings if supported by substantial evidence. (See *People v. Fuentes* (2022) 78 Cal.App.5th 670, 680.)

6

Assuming defendant harbored the same intent and objective for each of these offenses, substantial evidence nonetheless supports the trial court's imposition of separate sentences for the assault with a deadly weapon and corporal injury to a cohabitant convictions. The evidence showed that defendant had the time and opportunity to reflect and renew his intent to attack D.W. after assaulting D.W. with the knife or screwdriver and before shoving her. After defendant cut D.W.'s wrist with the knife and swung the screwdriver at her, Deputy Maul repeatedly ordered defendant to move away from the women and get on the ground. Instead of fully complying, defendant moved away from the women and turned his attention towards Deputy Maul, threatening to shoot Deputy Maul and telling Deputy Maul to shoot him, until D.W. tried to leave. At that point, defendant renewed his intent to attack D.W. by lunging towards her, grabbing her, and throwing her into the wall. The deputy's commands afforded defendant the time and opportunity to reflect on his actions. (*People v. Trotter*, *supra*, 7 Cal.App.4th at pp. 366-368.) Accordingly, substantial evidence supports the trial court's finding that defendant's acts of assaulting D.W. with a deadly weapon and shoving her into the wall were part of a divisible course of conduct allowing for multiple punishments.

**DISPOSITION**

The judgment is affirmed.

/s/
WISEMAN, J.*

We concur:

/s/
HULL, Acting P. J.

/s/
ROBIE, J.

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.